**Therese Marie SWENSON,**
**Plaintiff–Appellant,**

v.

**UNITED STATES POSTAL SERVICE;**
**Anthony M. Fank, Postmaster**
**General, et al., Defendants–Appellees.**

No. 88–15384.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 5, 1989.

Decided Dec. 4, 1989.

Victor C. Thuesen, Petaluma, Cal., for plaintiff-appellant.

Philip A. Kesaris, U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.

Before GOODWIN, Chief Judge, and SCHROEDER and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

Therese Marie Swenson appeals the district court's order granting summary judgment in favor of the United States Postal Service on her claim under the Privacy Act, 5 U.S.C. § 552a (1977). The Postal Service does not contest on appeal Swenson's contention that the district court judge relied on an inapplicable statutory provision in his decision to grant summary judgment. It argues that we should nonetheless affirm because (1) Swenson failed to state a claim under the Privacy Act, (2) her claim was barred by equitable estoppel, and (3) the disclosure qualified for the routine use exception under 5 U.S.C. § 552a(b)(3) (1977). We reject all three contentions, and reverse and remand.

I

Swenson worked as a rural route mail carrier for the United States Postal Service in California. In October of 1985, she wrote letters to Representative Eugene S. Chappie and Senator Pete Wilson, claiming that her postmaster deliberately undercounted rural route mail boxes.

Swenson stated that the alleged undervaluation qualified her postmaster for bonus and merit awards, while forcing mail carriers to work off the clock. She further suggested that the undercounting of rural routes resulted in lost revenues for the government, non-delivery of mail to boxholders on the end of routes, and reduced advertiser access to postal patrons. She also maintained that after she tried to correct the problem, she was "threatened with termination, harassed, subjected to verbal abuse, received unequalled observation and denied seniority rights."

Both Representative Chappie and Senator Wilson contacted the United States Postal Service seeking information about Swenson's allegations. The Postal Service responded with two letters which form the basis of Swenson's Privacy Act claim. The letters disclosed private facts about her employment status. In particular, the letters explained that Swenson had filed charges of sex discrimination with the Equal Employment Opportunity Commission ("EEOC"). One letter additionally disclosed that she had filed two grievances in

response to warnings from her employer. The letter did not mention that one warning had been rescinded.

Swenson filed an additional charge with the EEOC alleging that the Postal Service's letters to the congressmen were acts of reprisal for her sex discrimination charge. An EEOC hearing officer agreed. However, the district court ruled that 5 U.S.C. § 552a(b)(9) of the Privacy Act exempts disclosures to congressmen from its protection.

Appellant argues, and appellees do not contest, that the district court's basis for its decision was erroneous. The clear language of the Privacy Act exemption in § 552a(b)(9) applies only to a house of congress or a committee or subcommittee, not to individual congressmen. The Postal Service offers three alternative grounds to support the district court's summary judgment in its favor.[1] It contends first, that appellant failed to allege all of the necessary elements of a Privacy Act claim; second, that appellant's claim should be barred by equitable estoppel; and third, that the disclosures qualified for the routine use exception under 5 U.S.C. § 552a(b)(3) (1977).

## II

█ The Postal Service argues that Swenson's complaint fails to state a claim under the Privacy Act. 5 U.S.C. § 552a (1977). Specifically, it maintains that she did not allege that the Postal Service "intentionally" disclosed information contained in a "system of records," resulting in an "adverse effect" or "actual damages." 5 U.S.C. §§ 552a(a)(5), (g)(1)(D), (g)(4)(A) (1977).

Although the allegations in Swenson's complaint are not cast in precise statutory language, she does plead an intentional disclosure from a system of records. She alleges an intentional act by claiming that her employer released information in reprisal for her EEOC activities. She also

states that the information came from her personnel file, which the Postal Service lists as a system of records in its regulations. *See* 48 Fed.Reg. 10,980 (1983).

█ Finally, she claims that she suffered the adverse effect of "irreparable injury" from the disclosures. However, Swenson does not substantiate her adverse effect claim with specific allegations of injury. Neither the district court nor the appellees questioned appellant's injury allegation prior to this appeal. On remand, the district court should permit Swenson to amend her pleadings. *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir.1983) ("leave to amend should be freely given").

## III

█ The Postal Service argues that Swenson should be equitably estopped from complaining about disclosures to her congressmen because she asked for their help in remedying the undercounting on rural postal routes. It urges this court to adopt the reasoning in *Pellerin v. Veterans Administration*, 790 F.2d 1553 (11th Cir.1986).

In *Pellerin*, the court applied the doctrine of equitable estoppel to deny Pellerin's Privacy Act claim against the Veterans Administration for disclosures to his congressmen. Pellerin had solicited his congressmen's support to help him correct what he believed to be errors in his VA medical records. The court noted that Pellerin had consented in writing to confidential medical disclosures to his congressmen and denied relief. 790 F.2d at 1556.

Swenson's case differs from *Pellerin* in two important respects. First, she did not consent in writing to any disclosure to her congressmen. More importantly, the information which the Postal Service disclosed to her congressmen differed substantially from the subject of her letter. Swenson asked her legislators to investigate the undervaluation of rural routes, but the Postal

---

1. It is a well-settled principle of federal law that a court of appeals reviewing a district court's judgment may consider any ground supported by the record even where that ground was not the basis for the district court's decision. 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2716, 657–63 (2d ed. 1983).

Service disclosed information pertaining to her EEOC charges and letters of warning on wholly unrelated matters.

An EEOC hearing officer determined that the Postal Service's letters to Swenson's congressmen were acts of reprisal in response to her EEOC charge. While it is not totally implausible that Swenson might have considered that her congressmen would look into her EEOC charge and her employment record, it is much more likely that she believed her personal work performance to be largely irrelevant to the problem of undercounting on rural routes. Accordingly, we hold that Swenson is not equitably estopped from her Privacy Act claim.

## IV

The Privacy Act exempts disclosures for "routine uses" which would otherwise violate the Act. 5 U.S.C. § 552a(b)(3) (1977). The statute states that identification of all routine uses must be published annually in the Federal Register "including the categories of users and the purpose of such use." 5 U.S.C. § 552a(e)(4)(D) (1977). "The term 'routine use' means, with respect to the disclosure of a record, the use of such record for a purpose which is compatible with the purpose for which it was collected." 5 U.S.C. § 552a(a)(7) (1977).

One of the routine uses identified by the Postal Service in the Federal Register states that "[d]isclosure may be made to a congressional office from the record of an individual in response to an inquiry from the congressional office made at the request of that individual." 47 Fed.Reg. 1203 (1982).

Because the record on appeal does not contain the text of the letters from the congressmen, we cannot properly assess the responsiveness of the Postal Service's letters to the inquiries from the congressional offices. Assuming that the congressional requests were patterned closely after Swenson's letter, the Postal Service's disclosures arguably exceeded the inquiries.

However, even if the congressmen had requested information about Swenson's employment record, that inquiry would not have been "made at the request of" Swenson. She never asked her congressmen for help with her EEOC charges or with her letters of warning. Accordingly, the published routine use does not protect the Postal Service's disclosure.

Even if broad disclosures to congressional offices were protected under the Postal Service's published routine use, the use must still comply with the definition of routine use as set out in 5 U.S.C. § 552a(a)(7) (1977). The disclosure must be "compatible with the purpose for which it was collected." *Id.*

The Third Circuit recently explained that compatibility requires more than mere relevance: "There must be a more concrete relationship or similarity, some meaningful degree of convergence, between the disclosing agency's purpose in gathering the information and in its disclosure." *Britt v. Naval Investigative Service*, 886 F.2d 544 (3d Cir.1989). We agree. *See Covert v. Harrington*, 876 F.2d 751, 755 (9th Cir. 1989) (suggesting that the collection of data for security clearance purposes would not be compatible with disclosure to a criminal investigation).

The Postal Service states that its purpose in collecting data on EEOC charges is "to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO Program." 47 Fed.Reg. 1203 (1982). Its sole purpose in recording data on disciplinary actions is to perform routine personnel functions. 48 Fed.Reg. 10,980 (1983). The disclosures in this case addressed the congressmen's concerns with the alleged undercounting of rural mail routes. They were unrelated to and not compatible with the purpose for which the data was collected. We hold that the Postal Service's letters were not routine use disclosures.

## V

Swenson asks for attorneys' fees under 5 U.S.C. § 552a(g)(2)(B) (1977). That provision permits prevailing parties to recover attorneys' fees in cases brought under 5 U.S.C. § 552a(g)(1)(A). Because Swenson's suit arises under 5 U.S.C. § 552a(g)(1)(D),

she cannot recover fees under section 552a(g)(2)(B).

It is the obligation of parties seeking fees to identify the proper authority under which attorneys' fees may be sought. Ninth Circuit Rule 28–2.3. In this case, however, we note that attorneys' fees for cases brought pursuant to 5 U.S.C. § 552a(g)(1)(D) are recoverable under 5 U.S.C. § 552a(g)(4)(B). That section permits individuals to recover "the costs of the action together with reasonable attorney fees as determined by the court." *Id.*

An award of attorneys' fees would be premature in a decision reversing summary judgment. Although appellant is entitled to the award of costs on appeal, we leave the decision to grant attorneys' fees to the sound discretion of the district judge on final judgment.

## VI

## CONCLUSION

We reverse the summary judgment order incorrectly interpreting 5 U.S.C. § 552a(b)(9), and hold that summary judgment cannot be supported on an alternate ground.

REVERSED and REMANDED.