**Frank J. TAYLOR, Plaintiff,**

v.

**UNITED STATES of America
INTERNAL REVENUE
SERVICE, Defendant.**

**No. C 93–0180.**

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

Sept. 27, 1995.

David B. Blair, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for defendant IRS.

Frank J. Taylor, pro se.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

I. INTRODUCTION AND PROCEDURAL BACKGROUND.................443

II. STANDARDS FOR SUMMARY JUDGMENT............................445

III. FINDINGS OF FACT.............................................446
    A. Undisputed Facts.........................................446
    B. Disputed Facts...........................................447

III. CONCLUSIONS OF LAW.........................................448
    A. Disclosures Pursuant To § 6103.........................449
        1. Statutory provisions and action for violation.......449
        2. The "good faith interpretation" defense.............450
        3. Scope of protection, scope of disclosures...........451
        4. Oral requests and oral disclosures..................451
        5. Summary on claim of improper disclosure under § 6103.............452
    B. The Privacy Act Claim....................................453
    C. Other Pending Motions....................................454

IV. CONCLUSION....................................................454

BENNETT, District Judge.

The *pro se* complaint in this lawsuit was filed as an adversary complaint in the plaintiff's Chapter 7 bankruptcy proceedings. The plaintiff alleges that the United States Internal Revenue Service (IRS) violated his statutory and constitutional rights by providing certain information to the Iowa Department of Revenue and Finance (IDORF). The information provided was used in a state criminal prosecution of the plaintiff for income tax violations. The district court has since withdrawn its reference of this matter to the bankruptcy court pursuant to the IRS's motion. The matter currently before the court is the IRS's motion for summary judgment on the plaintiff's claims that the IRS violated the confidentiality provisions of 26 U.S.C. § 6103(d) and provisions of the Privacy Act, 5 U.S.C. § 552a.

**I. INTRODUCTION AND PROCEDURAL BACKGROUND**

Plaintiff Frank J. Taylor filed his *pro se* complaint in this matter on March 11, 1993, as an adversary complaint in his Chapter 7 bankruptcy filed on September 4, 1987. The defendant is the United States of America "acting as" the Internal Revenue Service (IRS). The complaint states two "claims for relief." The first claim for relief seeks declaratory judgment to the effect that (1) "any convention, treaty, compact or agreement existing between either the United States Government and the State of Iowa or the Internal Revenue Service and the Iowa Department of Revenue [is] invalid"; (2) 26 U.S.C. § 6103 is invalid, because it purports to include states as a portion of "tax administration" or to allow disclosure of information obtained by the IRS to states; (3) if 26 U.S.C. § 6103 is held to be valid, that it was violated in this case; (4) that the IRS violated Taylor's Fourth Amendment rights in unspecified ways; (5) that the IRS violated Taylor's Fifth Amendment rights to due process in unspecified ways; (6) and that Taylor has or intends to file his federal income tax returns for the years 1981 through 1988. The second "claim for relief" is for damages.

In this claim, Taylor seeks damages, first, pursuant to 26 U.S.C. §§ 7432 and 7433 for violation of 26 U.S.C. § 6103, and, second, for violation of 5 U.S.C. § 552a. In addition, Taylor seeks damages for violation of his rights under the Fourth and Fifth Amendments to the United States Constitution. The IRS answered the complaint on April 15, 1993.

On April 19, 1993, the IRS moved to withdraw the reference of this matter to the bankruptcy court pursuant to 28 U.S.C. § 157 so that this matter could proceed before the district court. On May 19, 1993, the IRS moved for summary judgment and for the court to abstain from hearing the plaintiff's tax claims in favor of proceedings then before the U.S. Tax Court. On August 3, 1993, by order of now Chief Judge Michael Melloy, who had formerly been the bankruptcy judge hearing this matter, the reference of this matter to the bankruptcy court was withdrawn. Taylor subsequently filed a number of other complaints in district court, all purportedly related to his bankruptcy case, and each of which was treated as a separate lawsuit pursuant to the August 3, 1994, order. Pursuant to Chief Judge Melloy's order, the bankruptcy estate, which had been closed in 1992,[1] was reopened to address Taylor's claims that he had assets available for distribution to creditors. Of greatest import here, however, was that the August 3, 1993, order also granted the IRS's motion to abstain from determining Taylor's tax liability. Thus, only that portion of the IRS's May 19, 1993, motion pertaining to summary judgment is currently pending before the court.[2]

The IRS's motion seeks summary judgment on Taylor's claim of violation of 26 U.S.C. § 6103, asserting that there is no genuine issue of material fact that the IRS complied with § 6103(d). The IRS also seeks summary judgment on this claim on the further ground that any disclosures the IRS made to the IDORF were based on a good faith interpretation of § 6103 as permitting the disclosures, such that no liability for violation of the statute, if violation there was, can be imposed upon the IRS. Finally, the IRS also seeks summary judgment on Taylor's Privacy Act claim, which alleges violation of 5 U.S.C. § 552a, on the ground that the IRS's disclosure of information to the IDORF was a "routine use" falling within an exception to liability under the Privacy Act.

Taylor filed a "preliminary resistance" to the IRS's motion for summary judgment on August 13, 1993, and a "supplement" to the record on August 31, 1993. There the matter languished for some time. On December 30, 1993, Chief Judge Melloy recused himself from this matter. Unfortunately, this case was not reassigned to any other judge until it was assigned to me on February 9, 1995.[3]

On April 10, 1995, Taylor filed a further "supplement to record and offer of proof in further resistance" to the motion for summary judgment, which had then been pending for the better part of two years. In his resistances, Taylor asserts that the IRS is not entitled to summary judgment, because the IRS's motion does not dispose of all of his claims. Taylor asserts that he has a "*Bivens*" action for violation of his constitutional rights, not just his statutory rights addressed in the IRS's motion, and that the IRS's motion for summary judgment does not address those constitutional claims. Furthermore, he asserts that the IRS has not addressed his claim that § 6103 is itself unconstitutional for various reasons, including

---

1. The bankruptcy estate had been closed after five-and-one-half years of administration during which only $18 in assets had been generated, discharge had been denied for misconduct, and sanctions had been imposed.

2. Two other motions filed by Taylor are also pending in this matter. One is a February 24, 1994, motion that two related lawsuits be heard as contested matters pursuant to Bankruptcy Rule 9014. The other is a motion by the trustee of the reopened bankruptcy estate to transfer the bankruptcy records back to the bankruptcy court for hearing of the trustee's final report and request for closing of the estate. These matters will be disposed of after the court has resolved the IRS's motion for summary judgment.

3. I was appointed a district judge for the U.S. District Court for the Northern District of Iowa on August 26, 1994. The other two pending motions were filed during the hiatus between Judge Melloy's recusal and assignment of this case to me.

violation of a constitutionally protected, fundamental expectation of privacy, which includes financial matters.

More to the point concerning claims on which the IRS has actually moved for summary judgment, Taylor asserts that there is a genuine issue of material fact as to whether or not the IRS made proper disclosures under § 6103, because he asserts that the IRS made improper oral disclosures pursuant to improper oral requests for information prior to receipt of any written request for information from the IDORF. Taylor also argues that the information disclosed to the IDORF exceeded the sort of "return information" that may be disclosed pursuant to § 6103, because it consisted of the entire investigative file generated by the IRS in its own aborted criminal investigation of Taylor. Finally, Taylor argues that no improper disclosure pursuant to § 6103 can be a "routine use" within the exception to liability under the Privacy Act.

Before turning to the factual background for the pending motions, the court must first consider the standards applicable to disposition of a motion for summary judgment.

## II. STANDARDS FOR SUMMARY JUDGMENT

The Eighth Circuit Court of Appeals recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions,* 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly 60 years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed

'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini,* 900 F.2d at 1238 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)); *Hartnagel v. Norman,* 953 F.2d 394, 396 (8th Cir. 1992).

The standard for granting summary judgment is well established. *Rule* 56 of the Federal Rules of Civil Procedure states in pertinent part:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim . . . is asserted . . . may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon. . . . *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

*Fed.R.Civ.P.* 56(b) & (c) (emphasis added); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Beyerbach v. Sears,* 49 F.3d 1324, 1325 (8th Cir.1995); *Munz v. Michael,* 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.,* 25 F.3d 707, 708 (8th Cir.1994); *Cole v. Bone,* 993 F.2d 1328, 1331 (8th Cir.1993); *Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir.1990); *Wabun–Inini,* 900 F.2d at 1238 (citing *Fed.R.Civ.P.* 56(c)).[4] A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, here Taylor, and give Taylor the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States*

---

4. An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that

might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); Munz v. Michael, 28 F.3d 795, 796 (8th Cir.1994); Allison v. Flexway Trucking, Inc., 28 F.3d 64, 66 (8th Cir.1994); Johnson v. Group Health Plan, Inc., 994 F.2d 543, 545 (8th Cir.1993); Burk v. Beene, 948 F.2d 489, 492 (8th Cir.1991); Coday v. City of Springfield, 939 F.2d 666, 667 (8th Cir.1991), cert. denied, 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

■ Procedurally, the moving party, here the IRS, bears "the initial responsibility of informing the district court of the basis for [its] motion and identifying those portions of the record which show lack of a genuine issue." Hartnagel, 953 F.2d at 395 (citing Celotex, 477 U.S. at 323, 106 S.Ct. at 2552); see also Reed v. Woodruff County, Ark., 7 F.3d 808, 810 (8th Cir.1993). The IRS is not required by Rule 56 to support its motion with affidavits or other similar materials negating the opponent's claim. Id.

■ "When a moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." Matsushita, ·475 U.S. at 586, 106 S.Ct. at 1355. Taylor is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324, 106 S.Ct. at 2553; McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 511 (8th Cir.1995); Beyerbach, 49 F.3d at 1325. Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985) (quoting Impro Products, Inc. v. Herrick, 715 F.2d 1267, 1272 (8th Cir.1983), cert. denied, 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), cert. denied sub nom. Metge v. Bankers Trust Co., 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). The necessary proof that the nonmoving party must produce is not precisely measurable,

but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Allison v. Flexway Trucking, Inc., 28 F.3d 64, 66 (8th Cir. 1994).

■ In Anderson, 477 U.S. at 249, 106 S.Ct. at 2510; Celotex, 477 U.S. at 323–24, 106 S.Ct. at 2552, and Matsushita, 475 U.S. at 586–87, 106 S.Ct. at 1356, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Johnson v. Enron Corp., 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovant['s] response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." Hartnagel, 953 F.2d at 396 (citing Celotex, 477 U.S. at 322, 106 S.Ct. at 2552). If Taylor fails to make a sufficient showing of an essential element of a claim with respect to which he has the burden of proof, then the IRS is "entitled to judgment as a matter of law." Celotex, 477 U.S. at 323, 106 S.Ct. at 2552; Woodsmith, 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. Anderson, 477 U.S. at 248, 106 S.Ct. at 2510; Burk, 948 F.2d at 492; Woodsmith, 904 F.2d at 1247. With these standards in mind, the court turns to consideration of the defendant's motion for summary judgment, beginning with examination of the undisputed and disputed facts in this case.

## III. FINDINGS OF FACT

### A. Undisputed Facts

The record reveals that the following facts are undisputed. Pursuant to 26 U.S.C. § 6103, the IRS and the IDORF entered into an Agreement on Coordination of Tax Administration, dated March 30, 1983, as well

as a *Federal–State Implementing Agreement,* dated May 24, 1984. Pursuant to those agreements, disclosures of taxpayer information between the IRS and the IDORF were authorized under the conditions required by 26 U.S.C. § 6103. Pursuant to provisions of the Privacy Act, 5 U.S.C. § 552a(a)(7) and (e), the IRS published in the Federal Register notices of "routine uses" of certain taxpayer records, including their disclosure to state revenue departments, pursuant to 26 U.S.C. § 6103, on July 22, 1985. *See* 50 Fed.Reg. 29821 & 29857. The "routine uses" disclosed included the following kinds of records: (1) records known as "Treasury/IRS System No. 42.001–Examination Administrative File", *see* 50 Fed.Reg. 29821; and (2) records known as "Treasury/IRS System No. 22.034–Individual Return Files, Adjustments and Miscellaneous Documents File." *See* 50 Fed.Reg. 29857. Notice of "routine use" of a third group of records, known as "Treasury/IRS System No. 24.030–Individual Master File (IMF), Returns Processing," including notice of disclosures pursuant to 26 U.S.C. § 6103, was published in the Federal Register for March 1, 1988. *See* 53 Fed.Reg. 6389.

It is undisputed that the IRS made three disclosures of written information pursuant to three written requests for information based on 26 U.S.C. § 6103 and the implementing agreements between the IRS and the IDORF that pertained to Taylor. The first such disclosure ("the 1986 disclosure") was pursuant to a written request dated June 26, 1986, ("the 1986 request"), from Randall Lane of the IDORF to Ted Reis, a disclosure officer or information exchange program liaison at the IRS. That request sought copies of "all audit workpapers, documents, and correspondence involved with the IRS investigation" of Taylor. Mr. Reis released the information, which was included within "Treasury/IRS System No. 42.001–Examination Administrative Files" records, to the IDORF on June 26, 1986. The second request for disclosure of information ("the 1987 disclosure"), also from Mr. Lane of the IDORF, dated February 24, 1987 ("the 1987 request"), was answered by Diane K. Austin, an IRS Disclosure Officer. The 1987 request sought Taylor's Form 1040 with attached schedules, including depreciation schedules, for the 1980 tax year. Ms. Austin released the requested information, which consisted of records included in "Treasury/IRS System No. 22.034–Individual Returns Files, Adjustments and Miscellaneous Documents File," on April 6, 1987. The third written request ("the 1991 request") and disclosure ("the 1991 disclosure") occurred in 1991. In a request dated April 22, 1991, Mr. Lane sought from the IRS Mr. Taylor's computerized transcripts of account for the 1981–1986 tax years. Ms. Austin provided the requested information on April 29, 1991. The transcripts of account are included in "Treasury/IRS System No. 24.030–Individual Master File (IMF), Returns Processing."

Based in part on the information received from the IRS, the IDORF conducted an investigation of Taylor's failure to file Iowa income tax returns for the years 1985 and 1986. Following that investigation, the state of Iowa filed a trial information, dated May 3, 1989, against Mr. Taylor for failure to pay Iowa income taxes and failure to file Iowa income tax returns for the years 1985 and 1986. At the trial, IRS official Diane Austin authenticated the records provided by the IRS to the IDORF and provided further testimony.

Taylor was convicted of two counts of fraudulent practice in the first degree in the state criminal proceedings on April 26, 1991, after a jury trial. On May 31, 1991, Taylor was given concurrent sentences for the two convictions, and was ordered to pay fines, and restitution. At a resentencing on December 2, 1992, the sentences were suspended and the amount of the fines was readjusted.

### B. *Disputed Facts*

Taylor alleges two issues of fact which he contends are both genuine and material to disposition of the present motion for summary judgment. First, Taylor alleges that the 1986 request demonstrates that there was, prior to any proper written request and written disclosure, some oral request from the IDORF and some oral disclosure by the IRS of his tax return information. Taylor points to a notation on the 1986 request

indicating the reason for the IDORF's request to be that, "We are also conducting an investigation and to avoid duplication of work, could use your documentation. He is a non-filer with us also." This notation, Taylor argues, demonstrates that prior oral requests and disclosures not countenanced by § 6103 must have occurred.

Further, Taylor asserts, in countering suggestions by the IRS that Taylor's claims as to the 1986 and 1987 disclosures are time-barred, that he only discovered that the oral and written disclosures were "unauthorized" until he deposed IDORF auditor Vincent O'Connor on November 18, 1992. Taylor asserts that he had no documentary evidence of "unauthorized" disclosures until IRS records were produced in these proceedings. Thus, Taylor argues, he filed this lawsuit within the two-year statute of limitations on March 11, 1993.

The court will determine, in the appropriate place, whether these assertions of factual disputes are either genuine or material to the disposition of the present motion for summary judgment. See Fed.R.Civ.P. 56(c); Anderson, 477 U.S. at 248, 106 S.Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 586–87, 106 S.Ct. at 1356; Hartnagel, 953 F.2d at 396.

## III. CONCLUSIONS OF LAW
### (Including some ultimate findings of fact)

Before considering the grounds for summary judgment in more detail, the court must first determine what, precisely, the court has been asked to determine in the IRS's motion for summary judgment. The court notes that the IRS's motion, although not designated a motion for "partial" summary judgment, explicitly seeks summary judgment only on two of Taylor's claims: a claim of violation of the provisions of § 6103, and a further claim of violation of provisions of § 552a of the Privacy Act. Although the IRS asserts in a footnote that Taylor's claim that § 6103 is unconstitutional is frivolous, the IRS has not moved for summary judgment on that claim, and the court feels no compunction to construe liberally the arguments of the IRS as against claims made, perhaps inartfully, in a pro se complaint. Similarly, the IRS has not addressed in any way what Taylor asserts is his "Bivens" claim of violation of his constitutional rights, in addition to his claim of violation of § 6103, arising from the IRS's disclosures to the IDORF.[5] Although a pro se complaint is entitled to liberal construction,[6] the court finds no such obligation to stretch the IRS's arguments to dispose of more of the case than the IRS has properly presented for

---

5. The court has considerable doubt that Taylor has asserted either a "Bivens" claim or asserted it against a proper defendant. In Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 397, 91 S.Ct. 1999, 2005, 29 L.Ed.2d 619 (1971), the United States Supreme Court authorized a direct cause of action for damages against federal officials based upon a deprivation of constitutional rights. See also Fuller v. Secretary of Defense of the United States, 30 F.3d 86, 88 (8th Cir.), cert. denied, — U.S. ——, 115 S.Ct. 583, 130 L.Ed.2d 497 (1994); Krueger v. Lyng, 927 F.2d 1050, 1053 (8th Cir. 1991). A "Bivens" action is sometimes referred to as a federal law analogue to an action under 42 U.S.C. § 1983. Vennes v. An Unknown Number of Unidentified Agents of the United States, 26 F.3d 1448, 1452 (8th Cir.1994) ("Bivens") action against IRS agents, not IRS), cert. denied, — U.S. ——, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995). In Bivens, the Court specified two exceptions to the availability of a direct cause of action for damages: where Congress has provided an alternative remedy, or where there are "special factors counselling hesitation in the absence of affirmative action by Congress." Krueger, 927 F.2d

at 1053 (citing Bivens, 403 U.S. at 396–97, 91 S.Ct. at 2005). Either or both of these exceptions may obtain here barring Taylor's "Bivens" claim. However, the court does not read the IRS's motion for summary judgment to address these issues, and the court will not do more than raise them here.

6. The court must also be mindful of its oft-stated obligation to treat pro se pleadings to liberal construction. See, e.g., Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per curiam) (allegations in a pro se complaint are entitled to a liberal construction); Mellott v. Purkett, 63 F.3d 781, 785 (8th Cir.1995) (pro se pleadings must be given "appropriate liberal construction"); Edgington v. Missouri Dep't of Corrections, 52 F.3d 777, 779 (8th Cir. 1995) (allegations of a pro se complaint are entitled to a liberal construction); Smith v. St. Bernards Regional Medical Ctr., 19 F.3d 1254, 1255 (8th Cir.1994). The court is aware of no such obligation to give liberal constructions to the motions of government defendants represented by qualified government counsel.

summary judgment. Thus, the court will consider *only* the IRS's motion for summary judgment as to two claims.

The first such claim, on which the court will consider the IRS's arguments for summary judgment, is the alleged violation of 26 U.S.C. § 6103. The grounds for summary judgment on this claim asserted by the IRS are that its disclosures complied with the provisions of § 6103, or that the IRS believed that the disclosures were authorized by § 6103, based on a "good faith" interpretation of the statute. The IRS further contends that any claims founded on the 1986 and 1987 disclosures are barred by the applicable statute of limitations. As to the first claim, Taylor asserts non-compliance with § 6103 in both written and oral disclosures, lack of a good faith interpretation that such disclosures could be permitted by the statute, and timeliness of his claims.

The second claim upon which the court will consider the IRS's motion for summary judgment is the claim of violation of § 552a of the Privacy Act. The court will consider the IRS's argument that, because the disclosures were authorized by § 6103, and proper notices of possible disclosures of such information pursuant to § 6103 were published in the Federal Register in compliance with the Privacy Act, the disclosures were exempt "routine uses." Taylor argues that no disclosure that was not in compliance with § 6103 could be a "routine use" exempt from penalties under the Privacy Act.

Having clarified the claims and grounds upon which summary judgment has been sought, the court now turns to consideration of each of those claims in turn.

### A. *Disclosures Pursuant To § 6103*

#### 1. *Statutory provisions and action for violation*

Section 7601 of Title 26 of the United States Code provides that the IRS is obligated to "inquire after and concerning all persons ... who may be liable to pay any internal revenue tax...." 26 U.S.C. § 7601. This provision gives the IRS "expansive information-gathering authority." *United States v. Arthur Young & Co.*, 465 U.S. 805, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984); *Speck*

*v. United States*, 59 F.3d 106, 108 (9th Cir. 1995). However, the IRS recognizes its obligation to respect the rights of taxpayers, *Diamond v. United States*, 944 F.2d 431, 434 (8th Cir.1991), and Congress has provided for the confidentiality of the vast amount of information the IRS obtains about individual taxpayers by enacting statutory provisions that prohibit the "unnecessary" disclosure of "return information." *See* 26 U.S.C. § 6103; *Huckaby v. United States Dep't of Treasury, Internal Revenue Serv.*, 794 F.2d 1041, 1046 (5th Cir.1986) ("Section 6103 forbids the disclosure of return information" with certain exceptions).

More specifically, § 6103 provides, in pertinent part, as follows:

> *Returns and return information* with respect to taxes imposed by chapter[ ] 1 ... shall be open to inspection by, or disclosure to, any State agency, body, or commission, or its legal representative, which is charged under the laws of such State with responsibility for the administration of State tax laws *for the purpose of, and only to the extent necessary in, the administration of such laws,* including any procedures with respect to locating any person who may be entitled to a refund. Such inspection shall be permitted, or such disclosure made, only upon *written request* by the head of such agency, body, or commission, and only to the *representatives of* such agency, body, or commission designated in such written request as individuals who are to inspect or to receive the returns or return information on behalf of such agency, body, or commission....

26 U.S.C. § 6103(d) (emphasis added); *Long v. United States*, 972 F.2d 1174, 1178 (10th Cir.1992) (§ 6103 "permits disclosure by the IRS to state agencies under certain conditions" identified in the statute as including a "written request" form a proper agent of the state); *Huckaby*, 794 F.2d at 1046 (§ 6103(d) provides exception for the IRS to disclose return information to state agencies upon a written request from the head of a state revenue agency). One of the purposes identified by Congress in enacting § 6103, as part of the Tax Reform Act of 1976, was to "strengthen the rights of taxpayers."

H.R.Rep. No. 658, 94th Cong., 1st Sess. 7 (1975), *reprinted in* 1976 U.S.CODE CONG. & ADMIN.NEWS 2897, 2902; S.Rep. No. 938, 94th Cong., 2d Sess., pt. 2, at 19, *reprinted in* 1976 U.S.CODE CONG. & ADMIN.NEWS at 3455; *Diamond,* 944 F.2d at 434.

■ As a further means of strengthening the rights of taxpayers, a cause of action is also authorized by statute for violation of the provisions of § 6103 pursuant to 26 U.S.C. § 7431. That statute provides, in pertinent part, as follows:

(a) **In general.—**

(1) **Disclosure by employee of the United States.—**If any officer or employee of the United States knowingly, or by reason of negligence, discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

26 U.S.C. § 7431(a)(1). Thus, unlike a *"Bivens"* action, which is brought against the federal agent for alleged tortious conduct, § 7431(a)(1) "vests the taxpayer with an action against the United States but not against the government agent personally." *Diamond,* 944 F.2d at 433 & 435; *see also Smith v. United States,* 964 F.2d 630, 632 (7th Cir.1992) (§ 7431 cause of action is against the United States), *cert. denied,* —— U.S. ——, 113 S.Ct. 1015, 122 L.Ed.2d 162 (1993); *Mid–South Music Corp. v. Kolak,* 756 F.2d 23, 25 (6th Cir.1984) (in action for alleged violation of non-disclosure provisions of § 6103 brought pursuant to § 7431(a)(1), "the only proper defendant to such a suit is the United States, and that no claim is stated against the individual defendants for such a statutory violation."); *Jones v. United States,* 869 F.Supp. 747, 753 (D.Neb.1994) ("Section 6103 establishes the antidisclosure scheme which protects 'returns' and 'return information,' but 26 U.S.C. § 7431 (1989) provides the civil remedy.").

Subsections of the same statutory provision also provide for damages, 26 U.S.C. § 7431(d), and a statute of limitations, stated as follows:

(d) **Period for bringing action.—**Notwithstanding any other provision of law, an action to enforce any liability created under this section may be brought, without regard to the amount in controversy, at any time within 2 years after the date of discovery by the plaintiff of the unauthorized disclosure.

26 U.S.C. § 7431(d).

**2. *The "good faith interpretation" defense***

The statute providing for a cause of action for violation of the confidentiality and disclosure provisions of § 6103 also provides for a defense of "good faith interpretation" of the statute as authorizing the disclosures in question:

(b) **No liability for good faith but erroneous interpretation.—**No liability shall arise under this section with respect to any disclosure which results from a good faith, but erroneous, interpretation of section 6103.

26 U.S.C. § 7431(b). Section 7431 does not define what constitutes a "good faith" interpretation of § 6103. *Diamond,* 944 F.2d at 435.

The Eighth Circuit Court of Appeals has adopted an "objective" standard of good faith, which it had found applicable to the "good faith" standard stated in the predecessor to § 7431, 26 U.S.C. § 7217 (1976). *Diamond,* 944 F.2d at 435 (citing *Rorex v. Traynor,* 771 F.2d 383, 387 (8th Cir.1985)). The Eighth Circuit Court of Appeals found that the "objective" standard of "good faith" had continued vitality for the present statute. *Id.* at 436 (citing *Huckaby v. United States Dep't of Treasury, Internal Revenue Serv.,* 794 F.2d 1041, 1048 (5th Cir.1986)). That objective standard of good faith was identified by the court in the following terms:

Government officials performing discretionary functions are "generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

*Diamond,* 944 F.2d at 435 (quoting this standards from *Rorex,* 771 F.2d at 387, which in

turn quotes *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)); *see also Huckaby,* 794 F.2d at 1048 (same standard); *see also Lebaron v. United States,* 794 F.Supp. 947, 954 (C.D.Cal.1992) (noting that only the district court for the district of Minnesota had interpreted the good faith standard of § 7431 to contain a subjective element, while the Fifth and Sixth Circuit Courts of Appeals, among other courts, had held that the standard was objective). The Eighth Circuit Court of Appeals has held that the IRS has made a good faith interpretation of § 6103 where, even though it erroneously disclosed return information, because it had failed to establish any need to do so, it had warned its agents against committing unnecessary disclosures and emphasized that unwarranted embarrassment to the taxpayer and other damaging collateral consequences can result from a "nonjudicious" disclosure of information. *Diamond,* 944 F.2d at 437.

### 3. *Scope of protection, scope of disclosures*

■ Section 6103 defines, in subsection (b), the terms "return" and "return information" to which the non-disclosure protections, and disclosure exceptions, of § 6103 extend. 26 U.S.C. § 6103(b). A useful summary of the information to which the statute pertains has been provided by the district court for the District of Nebraska:

> Briefly summarized, "return information" includes: (a) a taxpayer's identity, (b) the nature, source or amount of the taxpayer's income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, tax deficiencies, overassessment or tax payments, (c) whether the taxpayer's return was, is or will be examined or subject to other investigation, or (d) any other data received by, prepared by or furnished to or collected by the Secretary of the Treasury with respect to tax returns or determination of the existence or possible existence of liability for any tax, penalty, interest, fine or forfeiture.

*Jones v. United States,* 869 F.Supp. 747, 753 (D.Neb.1994).

■ Taylor asserts that more than "return information" was disclosed in this case, because, he asserts, the products of the IRS's entire aborted criminal investigation of him were turned over to the IDORF. However, he has signally failed to show or to establish a genuine issue of material fact that any of the information disclosed did not fall within the definition of "return information" provided by the statute. *Fed.R.Civ.P.* 56(e) (nonmovant must designate "specific facts showing that there is a genuine issue for trial."); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *McLaughlin,* 50 F.3d at 511; *Beyerbach,* 49 F.3d at 1325. Against this dearth of evidence is the IRS's evidence, including that of Diane Austin, that all of the information disclosed was precisely the contents of IRS return information files about which notices of possible disclosure pursuant to § 6103 had been made in the Federal Register. The court concludes that there is no genuine issue of material fact precluding summary judgment in favor of the IRS on Taylor's wrongful disclosure claim under § 6103 on the ground that the IRS made disclosure of "excessive" information or information that was not subject to such disclosure.

### 4. *Oral requests and oral disclosures*

Oral disclosures of the taxpayer's name and the fact that the taxpayer is under investigation constitute, by definition, disclosure of "tax return information," even though it would be virtually impossible for an IRS agent to respond to a request or to conduct the IRS's own investigations without disclosing such return information. *Diamond,* 944 F.2d at 437. Taylor asserts that this information was improperly requested and improperly disclosed in some oral contact between the IDORF and the IRS that preceded the first written request for information. However, the taxpayer seeking to impose liability for improper disclosures under § 6103 pursuant to an action under § 7431 must still establish the factual basis for a claim of improper oral disclosures or responses to improper oral requests for information. *Id.*

Taylor has established at least an issue of fact that an oral disclosure occurred in re-

sponse to an oral request prior to any written request for information from the IRS by the IDORF. The notation on the 1986 request Taylor points to does suggest that there had been an exchange of information prior to the filing of the written request in which both Taylor's name, some indication of an investigation, and his filing status with the IRS were revealed to the IDORF. However, an issue of fact as to whether oral requests and oral disclosures were made does not mean that the IRS is not entitled to summary judgment.

■ Section 6103 by its terms authorizes disclosures only pursuant to *written* requests for information from duly authorized persons. 26 U.S.C. § 6103(d); *Long,* 972 F.2d at 1178 ("written request" is required); *Smith,* 964 F.2d at 632 ("Section 6103 allows the disclosure of federal tax information only 'upon written request of the head of' the state 'agency, body or commission....' "); *Huckaby,* 794 F.2d at 1047 ("The point that is clear from these statutes and regulations is that the IRS cannot disclose return information to a state agency without some written communication."). Indeed, the Fifth Circuit Court of Appeals held that the requirement of a written request was so clear that the IRS could not have a "good faith interpretation" that disclosure could be made pursuant to an oral request. *Huckaby,* 794 F.2d at 1048–49.

■ However, the Seventh Circuit Court of Appeals has held that in the specific circumstances of the Agreement on Coordination between the District of Columbia tax department and the IRS, that agreement constituted the necessary written request upon which a subsequent oral request could be found to comply with § 6103. *Smith,* 964 F.2d at 633; *see also Long,* 972 F.2d at 1178–79 (citing *Smith,* and holding that similar terms in the Agreement on Coordination between the IRS and Colorado Department of Revenue met the "written request" requirement). The IRS here has made the same

argument concerning the Agreement on Coordination between the IDORF and the IRS as a "standing" written request meeting the "written request" requirement of the statute. The court finds that the Iowa Agreement on Coordination does contain, as do the Agreements on Coordination entered into between the IRS and the departments of revenue of all fifty states and the District of Columbia, *Long,* 972 F.2d at 1178, the provisions required by the Seventh Circuit Court of Appeals in *Smith*[7] in paragraph 3.2. Although the court suspects that recognition of "standing" written requests as complying with § 6103, which this court suspects Congress intended to require a specific, individualized request, is contrary to Congressional intent, there is no explicit language presenting such a requirement, and the court has found nothing specific in the legislative history of § 6103 that confirms a narrower interpretation. Furthermore, Congress has made no objection to the "standing" request by closing the loophole identified by the Seventh Circuit Court of Appeals with an amendment to § 6103 in the years since it was identified and the appearance of the identified provisions in the Agreements on Coordination between the IRS and the states. Thus, even the oral request and disclosures in this case must be held, as a matter of law, to have been in compliance with § 6103. Taylor's issue of fact is therefore not material, because it has no effect on "the outcome of the suit under the governing law," and therefore cannot properly preclude the entry of summary judgment for the IRS on Taylor's claim of violation of § 6103. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

**5. *Summary on claim of improper disclosure under § 6103***

Thus, the court concludes that the IRS is entitled to summary judgment on Taylor's claim of violation of the non-disclosure provisions of § 6103. There is no genuine issue of

7. The Seventh Circuit Court of Appeals held that the Agreement on Coordination could serve as a "written request" if it (1) requested tax information, (2) was signed by the head of the state tax agency, and (3) designated the individuals "who are to inspect or to receive the returns or return information" on behalf of the state agency. *Smith,* 964 F.2d at 633 (citing these requirements for a "written request" from § 6103(d)).

material fact that the IRS's disclosures exceeded the scope of allowable disclosure pursuant to the statute. Rather, the record evidence demonstrates that only disclosures of proper scope were made. Nor is there a genuine issue of *material* fact that improper disclosures were made pursuant to only an oral request, because there is a standing written request between the IRS and the IDORF meeting the "written request" requirements of the statute. Because the court concludes that there has been no violation of § 6103, it will not reach the arguments of the parties concerning a time bar to some of the claims founded on a violation of that statute, nor will it address the parties' arguments concerning whether or not the IRS believed that the disclosures were made pursuant to a "good faith interpretation" of the statute.

The court recognizes that, as a practical matter, its determination that there has been no violation of § 6103 may mean that the IRS or its agents would be entitled to good faith immunity in any *Bivens* action for violation of Taylor's constitutional, as opposed to statutory, rights. Furthermore, the court has some doubts that Taylor can mount constitutional challenges based on the Fourth Amendment or the Fifth Amendment due process clause. However, the IRS had neither moved for summary judgment on the merits of Taylor's constitutional claims nor asserted by way of the present motion for summary judgment its qualified immunity to such claims. Thus, those issues were not properly presented to the court by the IRS's motion for summary judgment, nor by cross-motion for summary judgment by Taylor. The court therefore turns to the only other issue presented by the IRS's motion for summary judgment, which is whether the IRS is also entitled to summary judgment on Taylor's claim of violation of provisions of the Privacy Act.

### B. *The Privacy Act Claim*

In addition to violation of § 6103, Taylor asserts that the IRS violated 5 U.S.C. § 552a, which is a provision of the Privacy Act. The IRS contends that its disclosures pursuant to § 6103 were "routine uses" excepted from the prohibitions on disclosures in the Privacy Act. Taylor counters that improper disclosures under § 6103 cannot be "routine uses" under the Privacy Act.

Taylor's Privacy Act claim appears to assert a claim pursuant to 5 U.S.C. § 552a(g)(4) for failure to comply with subsection (b) of the Privacy Act. Subsection (b) provides, in pertinent part, as follows:

No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, *unless* disclosure of the record would be—

\* \* \* \* \* \*

(3) for a routine use as defined in subsection (a)(7) of this section and described under subsection (e)(4)(D) of this section. . . .

5 U.S.C. § 552a(b); *Howard v. Marsh,* 785 F.2d 645, 647 (8th Cir.) ("The Privacy Act restricts the circumstances in which an agency may disclose records pertinent to an individual," with a few exceptions, including that in (b)(3), which "authorizes the disclosure of a record 'for a routine use.' "), *cert. denied,* 479 U.S. 988, 107 S.Ct. 581, 93 L.Ed.2d 584 (1986). "Routine use" is defined in the identified subsection as meaning, "with respect to the disclosure of a record, the use of such record for a purpose which is compatible with the purpose for which it was collected." 5 U.S.C. § 552a(a)(7). A "routine use" is then described in subsection (e)(4)(D) as follows:

(e) **Agency requirements.**—Each agency that maintains a system of records shall—

\* \* \* \* \* \*

(4) subject to the provisions of paragraph (11) of this subsection, publish in the Federal Register at least annually a notice of the existence and character of the system of records, which notice shall include—

\* \* \* \* \* \*

(D) each routine use of the records contained in the system, including the categories of users and the purpose of such use[.]

454

5 U.S.C. § 552a(e)(4)(D); *United States Postal Serv. v. Nat'l Ass'n of Letter Carriers,* 9 F.3d 138, 140 (D.C.Cir.1993) (identifying statutory requirements for the "routine use" exception).

■ The court concludes, first, that disclosure to another agency charged with assessment and collection of taxes would be a "use of such record for a purpose which is compatible with the purpose for which it was collected," 5 U.S.C. § 552a(a)(7), under either the generous or "far tighter" interpretations of the word "compatible" within the meaning of the statute proffered by the courts. *See United States Postal Serv.,* 9 F.3d at 144 (generous or restrictive interpretations of "compatible" use range from "capable of existing without disharmony" to near "identity of purpose," citing for the restrictive interpretations, *Britt v. Naval Investigative Serv.,* 886 F.2d 544, 549–50 (3d Cir.1989); *Swenson v. United States Postal Serv.,* 890 F.2d 1075, 1078 (9th Cir.1989)). Furthermore, in the statement of undisputed facts, the court identified the measures taken by the IRS that establish its compliance with the "routine use" requirements of the Privacy Act for the records in question. Taylor has failed to generate a genuine issue of material fact that the notice procedures were not complied with here.

However, Taylor's Privacy Act claim founders on a more fundamental failure, his failure to establish a violation of § 6103. Hence, the IRS has demonstrated that it complied with the notice provisions of the Privacy Act, thereby placing its disclosures pursuant to § 6103 within the "routine uses" exception of the Privacy Act, and only proper § 6103 disclosures occurred in this case. The IRS is therefore also entitled to summary judgment on Taylor's claim of violation of the Privacy Act.

### C. *Other Pending Motions*

There are two other pending motions. The first is a motion filed in this lawsuit, but seeking hearing of two ostensibly related lawsuits brought by Taylor, Nos. C93–316 and C93–317, as "contested matters" pursuant to Bankruptcy Rule 9014. Both of these matters have been otherwise disposed of and are no longer pending before this court.

Therefore, the motion for hearing of these other lawsuits as "contested matters" is denied as moot. There is no motion requesting that this lawsuit be heard as a "contested matter."

The second motion of the remaining motions currently pending before the court is the January 6, 1995, motion by the trustee of the reopened bankruptcy estate requesting transfer of records to the U.S. Bankruptcy Court for hearing and determination of the Trustee's Final Report and request for closing of the bankruptcy estate. Taylor resisted this motion on February 9, 1995, on the ground that the estate should not presently be closed. The IRS then filed, on February 16, 1995, an "opposition" to Taylor's attempts unilaterally to discharge his debts by asserting in an affidavit that creditors who failed to object to his "notice" in an affidavit in support of his February 9, 1995, resistance, would be "forever barred from attempting to collect from the debtor on any and all claims." Taylor's "notice" is plainly inappropriate, and to the extent it may be construed as a motion for the court to discharge Taylor in bankruptcy, that motion is denied. However, the trustee's motion proper for transfer of records, which the court construes to be a motion to renew the reference of the bankruptcy, No. L87–1882C, to the bankruptcy court for hearing and determination of the trustee's final report, the court concludes should be granted. The bankruptcy court has the expertise necessary to make a prompt determination of whether the estate should properly be closed. Thus, Case No. L87–1882C, to the extent that it is severable from the present action, which was formerly Adversarial No. 93–1042LC, is referred to the bankruptcy court for the limited purpose of hearing and determining the Trustee's Final Report and request for closing of the bankruptcy estate. Furthermore, the Clerk of Court is directed to return the records of Case No. L87–1882C to bankruptcy court to expedite disposition of the trustee's report and request for closing of the estate.

### IV. CONCLUSION

The court concludes that the IRS is entitled to summary judgment on the two claims

on which the IRS asserted its entitlement to such judgment. First, the IRS is entitled to summary judgment on Taylor's claim of violation of the non-disclosure provisions of § 6103. There is no genuine issue of material fact as to whether the IRS's disclosures exceeded the scope of allowable disclosures pursuant to the statute. Nor is there a genuine issue of *material* fact that improper disclosures were made pursuant to only an oral request, because there is a standing written request between the IRS and the IDORF meeting the "written request" requirements of the statute.

Turning to Taylor's Privacy Act claim, the court concludes that Taylor has failed to generate a genuine issue of material fact that the notice procedures for a "routine use" of the IRS records were not complied with here. Furthermore, Taylor has failed to establish a violation of § 6103 precluding a "routine use" of the disclosed material pursuant to § 6103. Hence, the IRS has demonstrated that it complied with the notice provisions of the Privacy Act, thereby placing its disclosures pursuant to § 6103 within the "routine uses" exception of the Privacy Act. The IRS is therefore also entitled to summary judgment on Taylor's claim of violation of the Privacy Act.

The court also concludes that of the two other motions currently pending, the first, plaintiff's motion that certain matters be heard as contested cases under Bankruptcy Rule 9014, must be denied as moot. Both of the matters to which the motion pertains have been otherwise disposed of. The second pending motion, a motion for return of records to the Bankruptcy Court for hearing and determination of the Trustee's Final Report, is granted. It is further ordered that Case No. L87–1882C is referred to the bankruptcy court for the limited purpose of hearing and determining the Trustee's Final Report and request for closing of the bankruptcy estate.

Finally, the court recognizes that this matter has been essentially on hiatus for almost two years. Because the court's disposition of the pending motions and intervening circumstances may have materially changed the posture of this case, the court believes it would be appropriate to enter a new scheduling order, including deadlines for any further discovery, further dispositive motions, and trial readiness. Therefore, the parties shall file a new agreed upon scheduling order by October 26, 1995. If the parties are unable to agree to a new scheduling order, the defendant shall file a report to the court so indicating and the matter shall be referred to U.S. Magistrate Judge Deck for a *Fed. R.Civ.P.* 16 conference.

**IT IS SO ORDERED.**