**Thomas J. SMITH, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Ira Loeb, J. Thomas Johnson, Kevin Houlihan, William Smith and Richard Dunn, Defendants–Appellees.**

Nos. 90–1011, 90–1760, 90–1857 and 90–2771.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 4, 1991.

Decided May 15, 1992.

As Corrected May 15, 1992.

Rehearing and Rehearing en banc Denied Aug. 19, 1992.

Wayne R. Golomb (argued), Springfield, Ill., for Thomas J. Smith.

Richard Farber, Gary R. Allen, Jonathan S. Cohen, William A. Whitledge (argued), Mary F. Clark, Dept. of Justice, Tax Div., Appellate Section, David C. Hickman, Dept. of Justice, Tax Div., Washington, D.C., James A. Lewis, Asst. U.S. Atty., Springfield, Ill., for U.S. and Ira Loeb in No. 90–1011.

Deborah L. Ahlstrand, Asst. Atty. Gen., Chicago, Ill., for J. Thomas Johnson, Kevin Houlihan, Richard T. Dunn, and William A.F. Smith.

Gary R. Allen, Jonathan S. Cohen, William A. Whitledge (argued), Mary F. Clark, Dept. of Justice, Tax Div., Appellate Section, David C. Hickman, Dept. of Justice,

Tax Div., Washington, D.C., James A. Lewis, Asst. U.S. Atty., Robert J. Eggers, Office of the U.S. Atty., Springfield, Ill., for U.S. in No. 90–1760.

Deborah L. Ahlstrand, Asst. Atty. Gen., Chicago, Ill., Gary R. Allen, Jonathan S. Cohen, William A. Whitledge (argued), Mary F. Clark, Dept. of Justice, Tax Div., Appellate Section, David C. Hickman, Dept. of Justice, Tax Div., Washington, D.C., J. William Roberts, U.S. Atty., James A. Lewis, Asst. U.S. Atty., Springfield, Ill., for U.S. in No. 90–1857.

Gary R. Allen, Jonathan S. Cohen, William A. Whitledge (argued), Mary F. Clark, Dept. of Justice, Tax Div., Appellate Section, Shirley D. Peterson, and David C. Hickman, Dept. of Justice, Tax Div., Washington, D.C., James A. Lewis, Asst. U.S. Atty., Robert J. Eggers, Springfield, Ill., for U.S. in No. 2771.

Before WOOD, Jr.* and CUDAHY, Circuit Judges, and GRANT, Senior District Judge.**

CUDAHY, Circuit Judge.

Section 6103(a) of the Internal Revenue Code (the Code)[1] prohibits disclosure of federal tax return information by, among others, any employee or official of the United States. Thomas J. Smith claims that Ira Loeb, the District Director of the Internal Revenue Service (IRS) in Springfield, Illinois, violated that provision when he informed J. Thomas Johnson, then-Director of the Illinois Department of Revenue (IDR), that Smith had not filed federal tax returns for either 1982 or 1983. At the time of the disclosure, Smith was employed by the IDR as the liaison official between the IDR and the IRS for the exchange of tax return information. The district court held that Loeb had violated section 6103(a) and awarded Smith $1,000 in statutory penalties. The court either dismissed or granted summary judgment for the defendants

---

* Judge Harlington Wood, Jr., assumed senior status on January 16, 1992, after this case was argued before the court.
** Honorable Robert A. Grant, Senior District Judge of the United States District Court for the

Northern District of Indiana, sitting by designation.

1. 26 U.S.C. § 6103(a) (1988).

on Smith's remaining claims, 723 F.Supp. 1300, which alleged violations of his civil rights by various officials of the IDR and the IRS.[2] Both sides appeal.

## I.

Smith's tax problems first came to the attention of Ira Loeb sometime in October of 1984.[3] On October 29, Loeb requested Eugene Winston, the Chief of the District's Collection Division, to put the information he had about Smith's delinquencies in writing. Winston submitted a memorandum later that day which stated that Smith had not filed a federal return for either 1982 or 1983 and that he had outstanding tax liabilities for both 1980 and 1981. After receiving this information, Loeb determined that it indicated a potential state tax violation and reflected poorly on Smith's ability to carry out his liaison responsibilities. Loeb decided that the IRS should disclose the information to the IDR and should request that Smith be relieved of his position as liaison official.

Loeb sought the advice of his district's disclosure officer and the district counsel on whether he could lawfully disclose the information regarding Smith. Section 6103(a)'s general prohibition against disclosure is not absolute, but is subject to certain exceptions contained within section 6103 itself. In particular, section 6103(d) provides an exception for disclosures of returns and return information to state tax officials. However, such disclosures may be made only "for the purpose of, and only to the extent necessary in, the administration of" state tax laws. 26 U.S.C. § 6103(d) (1988). Loeb was concerned about whether the disclosure he contemplated would meet this requirement in light of the then-recent decision of the Northern District of Illinois in *Rueckert v. Gore*, 587

F.Supp. 1238 (1984), which held that disclosure of federal tax information for the purpose of investigating the conduct of state revenue agents is not "tax administration" within section 6103(d). IRS counsel concluded that disclosure of Smith's tax information could lawfully be made under section 6103(d). Loeb then made arrangements to meet with Johnson, the Director of the IDR. At the meeting, which also took place on October 29, Loeb provided Johnson with a copy of the Winston memorandum and asked that Smith be removed from his position as liaison officer. Following an investigation by Johnson, Smith's employment with the IDR was ultimately terminated.

Smith filed suit against the United States under 26 U.S.C. § 7431, which creates a cause of action against the United States for the improper disclosure of an individual's return information. Smith alleged that Loeb's disclosure of his tax information to Johnson did not qualify for the section 6103(d) exception and therefore violated section 6103(a). Johnson did not argue that the information could not be disclosed at all—by the time he brought his suit, *Rueckert* had been reversed on that issue. *Rueckert v. IRS*, 775 F.2d 208 (7th Cir. 1985). Rather, he claimed that Loeb's disclosure was illegal because it failed to meet the procedural requirements of section 6103(d). Section 6103(d) allows the disclosure of federal tax information only "upon written request of the head of" the state "agency, body or commission" charged with responsibility for the administration of the state tax laws, and only to "the representatives of such agency, body, or commission designated in such written request as the individuals who are to inspect or receive the returns or return information on behalf of such agency, body, or commis-

---

**2.** Because we find Smith's challenges to these rulings on appeal to be entirely without merit, we do not discuss these claims in any detail.

**3.** The precise timing is a matter of some dispute. The affidavit of Loeb submitted in support of the government's motion for summary judgment states that Loeb first became aware of Smith's tax delinquencies in mid-October. That statement is supported by the affidavit of Kath-

leen Barley, IRS Disclosure Officer, which states that Loeb asked Barley to look into the legality of disclosing Smith's tax information to the IDR in mid-October. In Loeb's deposition testimony, on the other hand, he stated several times that he first learned of Smith's problems on October 29. Nothing of consequence turns on this issue, however, so that summary judgment is not precluded.

sion." 26 U.S.C. § 6103(d) (1988). Smith contended that Loeb had made his disclosure without such a "written request." In response, the government invoked two agreements between the IDR and the IRS: the Agreement on Coordination of Tax Administration (Agreement on Coordination) and its corresponding Implementing Agreement. The government argued that these two agreements constituted a "standing written request" under section 6103(d) for the type of information disclosed here.

The district court granted summary judgment for Smith on the issue of liability. 703 F.Supp. 1344. The court held that the Agreement on Coordination and the Implementing Agreement, which had become "part and parcel" of the statute, did not fulfill the written request requirement of section 6103(d) in this case because Loeb had failed to comply with the disclosure procedures set forth in the Implementing Agreement. The court also rejected the government's argument that there was no violation of section 6103(a) because Loeb had made the disclosure based on a good faith interpretation of section 6103(d), on the ground that Loeb had not "interpreted" section 6103(d) at all in deciding *how* to make the disclosure. The court awarded Smith $1,000 in statutory penalties.[4] 730 F.Supp. 948.

We review the district court's grant of summary judgment *de novo*. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir.1991). Summary judgment is appropriate only if, taking all facts in the light most favorable to the nonmoving party, we conclude that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir.1990).

## II.

■ There is no dispute that Loeb did not receive a specific, written request from the head of the IDR for information about Smith's tax status. Further, the government on appeal explicitly disclaims reliance on the Implementing Agreement to fulfill

section 6103(d)'s written request requirement. Reply Br. at 2, n. 1. Therefore, this case comes down to the following question: Does the Agreement on Coordination, standing alone, fulfill the requirement of a written request under these circumstances? We conclude that it does, but emphasize the limited scope of the holding, given that it depends in large part on the unusual facts presented here.

The IRS has entered into Agreements on Coordination with each of the fifty states and the District of Columbia. The Agreement on Coordination is signed by the Commissioner of Internal Revenue (the Commissioner) and the state's highest tax official (in this case, Johnson). It is the "basic" agreement "for achieving coordination of Federal and State tax administration" under section 6103(d). Agreement on Coordination § 1.2. The Commissioner has directed that the provisions of the Model Agreement on Coordination must be used in every case and that any modifications must be approved by the Commissioner. Further, when the Model Agreement is modified, it must be modified with respect to all states that have signed agreements by addenda to the agreement with each state. Disclosure of Official Information Handbook ¶ (33)41, *Internal Revenue Manual* 1272–1, 1272–382—83 (Disclosure Handbook).

■ In order for the Agreement on Coordination to fulfill the written request requirement of section 6103(d), it must (1) "request" tax information, (2) be signed by the head of the state tax agency and (3) designate the individuals "who are to inspect or to receive the returns or return information" on behalf of the agency. 26 U.S.C. § 6103(d). The Agreement on Coordination meets these criteria. Section 3.2 of the Agreement provides:

> This agreement constitutes the requisite authorization pursuant to section 6103(d) of the Code for I.R.S. to disclose to, and permit inspection by, an Agency representative of Federal return information

---

**4.** The district court denied Smith's claims for actual and punitive damages and attorney's fees.

relating to taxes imposed by chapter(s) 1 [Income Taxes] ... of the Code.

Section 5.1 states that the IDR and the IRS will furnish each other with information on audit adjustment, and section 5.2 provides that the IDR and the IRS "will exchange lists of taxpayers and other information relevant to the identification of persons who have failed to file tax returns." The Agreement on Coordination thus constitutes a blanket request for certain categories of information, including information relating to tax delinquencies and failures to file returns. These categories clearly include the information disclosed in this case.

Further, section 3.2 of the Agreement on Coordination designates the individuals who are to receive information from the IRS on behalf of the IDR. That provision specifies that only persons who qualify as "Agency representative[s]" may receive information disclosed under section 6103(d). The Agreement on Coordination defines "Agency Representative" as "an Agency officer or employee designated in writing by the head of the Agency as an individual who is to inspect or receive Federal returns or Federal return information." Agreement on Coordination § 2.4. Although this designation is phrased in general terms, we think it satisfies the requirements of section 6103(d). Nothing in the statute suggests that the designation cannot be a general one, to be implemented by the head of the state tax agency in accord with the agency's internal procedural guidelines. Finally, the Agreement on Coordination was signed by the head of the IDR, the state taxing authority.

The interpretation of the Agreement on Coordination as a standing written request for certain categories of information is supported by the provision of the Disclosure Handbook that deals with disclosures to agencies which have not entered into Agreements on Coordination. That provision states:

The head of a State tax agency ... may request access to returns and return information on a case-by-case basis under section 6103(d) of the Code without entering into an Agreement on Coordination of Tax Administration.

Disclosure Handbook ¶ 33(44), *Internal Revenue Manual* at 1272–390. These case-by-case requests must comply with the requirements of section 6103(d). *Id.* This provision clearly assumes that where the head of the state taxing authority *has* entered into an Agreement on Coordination, case-by-case requests for tax information are unnecessary. The logical explanation for that assumption is that the Agreement on Coordination itself satisfies the written request requirement of section 6103(d).

Smith, however, argues that the Agreement on Coordination cannot itself fulfill the written request requirement of section 6103(d) in light of the provisions of the Implementing Agreement. The Implementing Agreement is negotiated between the District Director of Internal Revenue and the head of the state tax agency. It specifies detailed working arrangements and items to be exchanged under the Agreement on Coordination. The Disclosure Handbook requires six topics to be included in the Implementing Agreement, and provides suggested language for some of them. Disclosure Handbook ¶ (33)42.2, *Internal Revenue Manual* at 1272–384— 85. It also provides that the Implementing Agreement may be amended by the District Director and the head of the state tax agency as needed. *Id.* at 1272–386. Finally, the Handbook provides that, in case of any conflict between the provisions of the Implementing Agreement and those of the Agreement on Coordination, the Agreement on Coordination governs. Disclosure Handbook ¶ (33)42.1, *Internal Revenue Manual* at 1272–383—84.

In the usual case, the Implementing Agreement limits the operation of the broad request for information contained in the Agreement on Coordination by listing specific types of information to be exchanged routinely and setting forth procedures for disclosing information that is authorized by the Agreement on Coordination but would not be exchanged automatically under the Implementing Agreement. Smith places particular emphasis on the

following provision of the Implementing Agreement:

> When the IRS liaison official has a Federal return and/or return information which will not be transmitted to the Agency under other provisions of this agreement but which may be evidence of any intentional or inadvertent understatement or violation of any State tax described in section 3 of the Agreement on Coordination of Tax Administration, the IRS liaison official shall ... contact the Agency liaison official and describe the return and/or return information (without disclosing identifying information) in sufficient detail to ascertain the Agency's need and potential use of the return or return information. If, in the judgment of the IRS liaison official, the Agency has a need and use of the return and/or return information, he/she shall then provide the Agency liaison official sufficient information, including identifying information, to make a specific request for the return and/or return information as provided by Section 8 of the Agreement on Coordination of Tax Administration and by section VIII of this implementing agreement.

Implementing Agreement § II.A.6. Smith argues that Loeb had to follow these procedures in order to meet the written request requirement of section 6103(d) in making the disclosure of his tax information. We disagree.

Although the Implementing Agreement, as noted, limits the day-to-day operation of the request for information contained in the Agreement on Coordination, nothing in the Agreement on Coordination suggests that the legal effect of the request itself is somehow contingent upon the provisions of the Implementing Agreement. On the contrary, the Agreement on Coordination contains significant language suggesting the opposite. For example, section 3.4 refers to federal tax information that "has been disclosed as provided by section 6103(d) of the Code and paragraph 3.2 of this agreement." It contains no reference to the Implementing Agreement. Several other provisions of the Agreement on Coordination also refer to disclosures made "pursuant to this agreement," with no suggestion that such disclosures also depend on compliance with the Implementing Agreement.[5]

The provision of the Implementing Agreement relied on by Smith itself supports the conclusion that compliance with the Implementing Agreement is not necessary to meet the requirements of section 6103(d). First, the "request" specified in that provision is not required by the Disclosure Handbook and is not included in the suggested language for the provision. Disclosure Handbook ¶ (33)42.2, *Internal Revenue Manual* at 1272–384. In addition, such a request would not itself fulfill the requirements of section 6103(d). The request specified by the Implementing Agreement is made by the IDR liaison officer, *not* the head of the IDR as required by section 6103(d). Nothing in either the Agreement on Coordination or the Implementing Agreement suggests that the head of the IDR has delegated his authority to request information to the liaison officer; it is not even clear that he *could* do so under the statute.

The Implementing Agreement does not provide an exclusive, statutorily mandated method for making the disclosures authorized by the Agreement on Coordination. Rather, it sets forth routine, internal procedures to be followed by the IRS and the IDR in exchanging tax return information. These procedures provide a sort of "safe harbor" to ensure that disclosures are not made casually or without adequate safeguards. It is certainly preferable for the IRS to follow those procedures in the usual case. But this case was not "usual." The Implementing Agreement does not contemplate a situation in which the information in question involves the liaison officer, through whom disclosures are usually made. The terms of the Implementing Agreement simply were not applicable in this case. The Agreement on Coordination, however, *was* applicable; it explicitly contemplates disclosure of the type of tax information at issue here, and it trumps the

---

**5.** *See, e.g.,* sections 6.1, 6.2 and 9.2.

Implementing Agreement. Loeb's disclosure did not violate section 6103(a).

### III.

For the foregoing reasons, we RE-VERSE the district court's grant of summary judgment for Smith on the issue of liability in case number 90–1011, and direct the court to enter an order granting summary judgment for the United States. This disposition of Smith's claim under section 7431 moots Smith's challenges to the district court's denial of actual and punitive damages and attorney's fees. We AFFIRM the district court's rulings on Smith's other claims.