**BRICKLAYERS UNION LOCAL 21, et al., Plaintiffs,**

**v.**

**Jim EDGAR, Governor of the State of Illinois, et al., Defendants.**

No. 95 C 3778.

United States District Court, N.D. Illinois, Eastern Division.

March 29, 1996.

**104**

Joel Abbott D'Alba, Stephen Jay Feinberg, Marvin Gittler, Asher, Gittler, Greenfield, Cohen & D'Alba, Chicago, IL, for plaintiffs.

Marita Clare Sullivan, Robert Shorey Graettinger, Illinois Attorney General's Office, Chicago, IL, for Jim Edgar.

Robert Steven Markin, Chicago Board of Education, Chicago, IL, for Illinois Educational Labor Relations Board.

Ted Grant Goldsmith, Miguel Angel Rodriguez, Michael Joseph Hernandez, City of Chicago Board of Education, Chicago, IL, La–Verne Rolle Saunders, Board of Education of the City of Chicago, Law Department, Chicago, IL, James C. Franczek, Patricia J. Whitten, Franczek, Sullivan, Mann, Crement, Hein, Relias, P.C., Chicago, IL, for Chicago School Reform Bd.

### MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

Eighteen civil service employee unions (the unions) have sued Governor Jim Edgar, the Illinois Educational Labor Relations Board, and the Chicago School Reform Board. The unions seek a declaration that particular sections of House Bill 206, 89th General Assembly (1995) (H.B. 206) unconstitutional under the United States and Illinois State Constitutions and they seek a preliminary and permanent injunction enjoining defendants from enforcing or acting under the Bill. Defendants have moved to dismiss this action pursuant to Rule 12(b)(6).

### Facts

On September 1, 1993, plaintiff unions entered into a two-year collective bargaining agreement with the Chicago School Board. The unions functioned as the exclusive bargaining representatives of those non-teacher employees of the Chicago public school system. The agreements contained various provisions concerning the rights and responsibilities of both parties. Some of these established the Board's recognition of the unions as the sole and exclusive bargaining representative concerning wages, hours, benefits and conditions of employment, decisions to contract services from employees represented by unions, and decisions to discipline and discharge employees.

The two sides also agreed to begin renegotiation of the collective bargaining agreements no later than June 1, 1995. These negotiations proved fruitless, however, and all collective bargaining agreements terminated on August 31, 1995.

On May 30, 1995, the Illinois General Assembly, passed several legislative amendments that altered the structure and powers of the Chicago public school system. The General Assembly found that an educational crisis existed in the Chicago public school system, and thus created the Chicago School Reform Board of Trustees (Board) to bring both financial and educational stability to the system. The General Assembly granted the Board the power to increase the quality of educational services in Chicago, to develop a long-term financial plan that best used the available resources, to implement cost-saving measures in an effort to reduce excess spending, and to create an efficient and effective management system in the Chicago public school system. Along with these new powers, the new state law removed the un-

ions' exclusive bargaining power with the school district.

The legislation changed the roles and powers of the principals and administrators in the system, and reorganized the individual school units with an increased emphasis on granting each local school the power to make appropriate changes on its own. The change in law affected the rights of teachers and non-teacher employees in the Chicago public school system. Principals were given the power to hire, fire, and discipline non-teacher employees without regard to civil service status. The law also eliminated the requirement of union consent before employees could waive certain provisions of their contract.

■ On a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff. *Prince v. Rescorp Realty,* 940 F.2d 1104, 1106 (7th Cir.1991). A complaint should not be dismissed under Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Leahy v. Board of Trustees of Community College Dist. No. 508,* 912 F.2d 917, 921 (7th Cir. 1990), quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### Contract Clause

The unions here contend that H.B. 206 impairs three different "contractual" relationships in violation of the Contract Clause of the United States Constitution. These include the existing and future collective bargaining agreements between the plaintiff unions and the Board, the union constitutions and bylaws and the implied civil service contracts between the Board and plaintiff unions.

■ The Contract Clause limits the power of the States to modify post hoc their own contracts as well as to change those between private parties. Yet the Contract Clause does not prohibit the States from repealing or amending statutes generally, or from enacting legislation with retroactive ef-

fects. *United States Trust Co. of New York v. New Jersey,* 431 U.S. 1, 17, 97 S.Ct. 1505, 1515, 52 L.Ed.2d 92 (1977). Where it is relevant, the Clause applies only to laws with retrospective, not prospective, effect. *Local Div. 589, Amalgamated Transit Union, AFL–CIO, CLC v. Commonwealth of Massachusetts,* 666 F.2d 618, 637 (1st Cir.1981).

■ There is a four-part inquiry under the Contract Clause. First, the new legislation must involve a contractual obligation. Second, the legislation must impair the obligation. Third, the impairment must be substantial. Fourth, in order to be valid, the impairment must be "reasonable and necessary to serve an important public purpose." *Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 411, 103 S.Ct. 697, 704, 74 L.Ed.2d 569 (1983). However, if there is no contract or the impairment is not substantial, the inquiry ends and there is no Contract Clause violation.

■ A. The unions say H.B. 206 impairs existing and future collective bargaining agreements. The Contract Clause is only implicated when an existing contract is substantially impaired. *Trust Co.,* 431 U.S. at 17, 97 S.Ct. at 1515. All collective bargaining agreements that plaintiffs claim exist expired on August 31, 1995. Because the Contract Clause applies only to existing contracts, plaintiffs' claims regarding contracts which are no longer in effect are apparently moot. *Id.* The claims regarding future contracts do not state a claim since the Contract Clause does not apply to laws with prospective effect. *Local Div. 589,* 666 F.2d at 637.

■ But the unions counter that the expiration dates in the collective bargaining agreements do not by themselves render the dispute moot since an employer is required to maintain the status quo until new agreements are reached, thus the contracts did not expire on their expiration dates. To maintain the status quo is not to renew existing contracts after the expiration dates have passed. The duty to maintain the status quo, otherwise known as the unilateral change doctrine, is "derived from the statutory command to bargain in good faith." *Litton Financial Printing Div., a Div. of Litton Busi-*

*ness Systems, Inc. v. N.L.R.B.,* 501 U.S. 190, 203, 111 S.Ct. 2215, 2224, 115 L.Ed.2d 177 (1991). Assuming this doctrine applies here, it is no help to plaintiffs. Under the unilateral change doctrine, most terms and conditions of employment are not subject to unilateral change by the employer after expiration of the contract in order to preserve the right to bargain. However, not all terms are subject to this doctrine, and those terms that are do not have force by virtue of the contract. *Litton,* 501 U.S. at 206, 111 S.Ct. at 2225. "An expired [collective bargaining agreement] ... is no longer a 'legally enforceable document' ... Section 301 of the LMRA, 29 U.S.C. § 185, does not provide for federal court jurisdiction where a bargaining agreement has expired, although rights and duties under the expired agreement 'retain legal significance because they define the *status quo'* for purposes of the prohibition on unilateral changes." *Litton,* 501 U.S. at 206, 111 S.Ct. at 2225. (internal citations omitted).

■ The unions also argue that the Act's provisions allowing employee waivers without union consent are subject to Contract Clause limitations. However, the Act clearly states that the "waiver" provision only applies to "any collective bargaining agreement entered into after the effective date of this amendatory Act of 1995." 105 ILCS 5/34–8.1a. The effect of the legislation is thus prospective. The Contract Clause applies only to laws with retrospective effect so the "waiver" provisions do not violate the Contract Clause. *Local Div. 589,* 666 F.2d at 637.

■ B. Plaintiffs next assert that the elimination of certain civil service rights impairs implied contracts in violation of the Contract Clause. Plaintiffs claim that the implied contracts are based on Section 34–15 of the School Code, 105 ILCS 5/34–15, which prior to enactment of H.B. 206 provided for continued employment absent just cause and discipline review mechanisms. Thus, the unions rely on a statute to establish a right, but a statute is presumed not to create contractual rights. *Pittman v. Chicago Bd. of Educ.,* 64 F.3d 1098, 1104 (7th Cir.1995), *petition for cert. filed,* 60 U.S.L.W. 3576 (U.S. Feb. 12, 1996) (No. 95–1318). A statute is not a commitment by the legislature never

to repeal the statute. The only way the State can commit itself is by making a contract. *Id.* "To treat statutes as contracts would enormously curtail the operation of democratic government. Statutes would be ratchets, creating rights that could never be retracted or even modified without buying off the groups upon which the rights had been conferred." *Id.*

Plaintiffs correctly point out that the civil service system was memorialized in the contracts between the plaintiff unions and the Board, thus differentiating this case from *Pittman* where Judge Posner stated, "[i]f tenure for principals were a term in a contract between the principals and the board of education, the State could not abrogate the term without a greater showing of justification than has been attempted." *Id.* However, the civil service rights incorporated in the contracts expired along with the other portions of the collective bargaining agreements and the Contract Clause does not redress violations of an expired contract.

■ C. Next it is argued that the union constitutions and bylaws constitute contracts between the unions and their members for purposes of Contract Clause analysis and have been impaired by H.B. 206. Defendants assert the union constitutions and bylaws do not constitute contracts for Contract Clause analysis. Maybe so, but courts have considered union constitutions and bylaws to be binding contracts between unions and their members for purposes of certain federal laws. *Shea v. McCarthy,* 953 F.2d 29, 30–32 (2d Cir.1992); *Wooddell v. International Broth. of Elec. Workers, Local 71,* 502 U.S. 93, 99–101, 112 S.Ct. 494, 499, 116 L.Ed.2d 419 (1991). I assume, for purposes of this motion and without further analysis, that plaintiffs have established the presence of an existing contract in the union constitutions and bylaws.

■ Can the unions prove that the State law substantially impairs these contractual relationships? *Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 411, 103 S.Ct. 697, 704, 74 L.Ed.2d 569 (1983). An impairment rises to the level of substantial when it abridges a right which

fundamentally induced the parties to contract initially or when it abridges legitimate expectations which the parties reasonably and heavily relied upon in contracting. *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 246, 98 S.Ct. 2716, 2723, 57 L.Ed.2d 727 (1978). The main reason employees join unions is to have unions negotiate exclusively on their behalf for specific rights. H.B. 206 removes the unions as the employees' exclusive bargaining agent in negotiating contracts concerning wages, hours and working conditions. As such, H.B. 206 cuts at the very essence of the unions' purpose as it is embodied in the union constitutions and by-laws, thereby creating a substantial impairment of a contractual obligation.

■■■■ The final question to be resolved is whether the impairment can be sustained on the grounds its public purpose. At issue are the private contracts of the union constitutions and bylaws. Legislation which impairs the obligations of private contracts is tested under the contract clause by reference to a rational-basis test; that is, whether the legislation is a reasonable means to a legitimate public purpose. *Trust Co.,* 431 U.S. at 22–23, 97 S.Ct. at 1517–18. "As is customary in reviewing economic and social regulation, however, courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." *Id.* citing *East New York Savings Bank v. Hahn,* 326 U.S. 230, 66 S.Ct. 69, 90 L.Ed. 34 (1945).

The Illinois General Assembly made specific findings that the Chicago public school system is in an educational crisis. To rectify this situation, the Assembly passed H.B. 206 to bring educational and financial stability to the Chicago public schools. Creating different systems for negotiating employee contract terms with the school district is rationally related to the legitimate interest of eliminating inefficiency and waste in the school system. It is difficult to conceive of a credible argument that it is not. The General Assembly may be right or wrong in what it did, but it cannot be found to have been irrational. As such, there is no Contract Clause violation.

Defendants' motions to dismiss counts I–IV are granted.

## Due Process

The unions next allege that their legitimate expectations of continued employment absent cause for firing and their rights to contest discipline and discharge were eliminated by the new legislation without procedural due process of law and that the amendments are so unreasonable and fundamentally unfair that they violate plaintiffs' substantive due process rights as well.

■■■■ Procedural due process applies to a State's deprivation of life, liberty or property. *Wroblewski v. City of Washburn,* 965 F.2d 452, 455 (7th Cir.1992) citing *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Plaintiffs assert property rights to continued employment absent cause explicitly conferred by legislation and by written contractual obligations. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709.

■■■■ Plaintiffs clearly had property rights in the collective bargaining agreements as public employees have property interests in continued employment during the term of their contracts. *Roth,* 408 U.S. at 576–77, 92 S.Ct. at 2708–09. However, plaintiffs' constitutionally protected interest in property expired on August 31, 1995 when the collective bargaining agreements expired. Furthermore, plaintiffs do not claim that any union employee was fired, disciplined or suspended while the contracts were still in force, a time in which plaintiffs were entitled to due process. Plaintiffs, therefore, have no procedural due process claim based in contract.

■■■■ Plaintiffs do have a constitutionally protected interest in continued employment absent cause. State law conferred civil service status on union employees. *Fumarolo v. Chicago Bd. of Educ.,* 142 Ill.2d 54, 106, 566 N.E.2d 1283, 1306, 153 Ill.Dec. 177, 200 (1990) (State law can create a property interest in employment), citing *Roth,* 408 U.S. 564, 92 S.Ct. at 2702–03. However, a proper-

ty interest which is created by State law can be prospectively removed by State law. *Smith v. United States,* 723 F.Supp. 1300, 1309 (C.D.Ill.1989), *aff'd,* 964 F.2d 630 (7th Cir.1992). "While the state is not free to confer a property interest such as tenure on a public employee, and then arbitrarily discharge that employee in violation of that interest, a state is free to abolish the entire interest." *Id. See also Kizas v. Webster,* 707 F.2d 524 (D.C.Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984).

■ Once a constitutionally protected interest in property is found, the deprivation of that interest by State action is unconstitutional only when the deprivation is without due process of law. *Vukadinovich v. Board of School Trustees of Michigan City Area Schools,* 978 F.2d 403, 410 (7th Cir.1992). Generally, due process requires the State to provide some type of hearing accompanied by notice and an opportunity to be heard prior to depriving a person of his property interest. *Id.* "[T]he legislative process itself created all the procedural safeguards necessary to provide the plaintiffs with due process." *Fumarolo,* 142 Ill.2d at 107–08, 566 N.E.2d at 1307, 153 Ill.Dec. at 201. So long as normal legislative process was followed and the enactment of the statute was not arbitrary or irrational, the legislative process itself satisfies due process. *Id.* Plaintiffs do not allege procedural irregularities in the legislative process. Thus, despite plaintiffs' property interest in continued employment, they were not deprived of their interest without due process of law. Indeed, one would have to be terminally naive to believe that unions and employers are not heard in the Illinois General Assembly and heard often in each session.

■ In asserting the substantive due process claim, plaintiffs concede that no fundamental right or suspect classification exists and thus the challenged legislation violates substantive due process only if it lacks any rational basis. As a result, the regulation in question need only "bear a rational relation to a legitimate government interest." *Vaden v. Village of Maywood, Ill.,* 809 F.2d 361, 364 (7th Cir.1987), citing *Williamson v. Lee Opti-*

*cal of Oklahoma, Inc.,* 348 U.S. 483, 487–88, 75 S.Ct. 461, 464–65, 99 L.Ed. 563 (1955).

The Illinois General Assembly made specific findings that an educational crisis exists in the Chicago public school system and then altered the Chicago public school system including the elimination of "civil service" status for non-certificated employees. The purpose of these amendments was to bring educational and financial stability to the Chicago public schools and improve efficiency and accountability.

■ Plaintiffs question how efficiency and waste are reduced by permitting disciplinary dismissals without a hearing only for non-teachers and how this will improve the quality of education in Chicago schools. However, the rational basis standard of review is a paradigm of judicial restraint. Where there are plausible reasons for the legislature's action, the court's inquiry is at an end. *F.C.C v. Beach Communications,* 508 U.S. 307, 313–14, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993).

Eliminating the civil service status of non-teachers may or may not actually bring about the goals of the new legislation. Hearings are expensive, the lawyers, the hearing officers are all paid. Witnesses are supervisors and employees taken away from work at the schools. Prompt and effective discipline improves efficiency. Of course, a pattern of unfair discipline will demoralize a good work force. A legislature can decide which risk is to be taken. The new legislation is thus rationally related to the legitimate purpose of improving the efficiency and accountability of Chicago's public schools system. There is a new trend toward the decentralization and privatization of governmental functions and localization of school power. Experimentation is called for to improve the rapidly declining public education system in this country. But it is not the role of this Court to determine how best to improve our public schools. So long as the measures are rationally related to improving the school system, the federal courts will not interfere with the legislative efforts to improve them. *See Pittman v. Chicago Board of Education,* 64 F.3d 1098, 1103 (7th Cir.1995), *petition for cert.*

*filed,* 64 U.S.L.W. 3576 (U.S. Feb. 12, 1996) (No. 95–1318) (federal courts applying substantive due process should not 'snuff out' legislative experiments to improve public institutions).

## Equal Protection

The unions invoke equal protection principles on grounds that the new law eliminates civil service status only for noncertificated Board employees and assert that there is discrimination in favor of "third party" contracts as compared to labor unions' collective bargaining contracts.

The Equal Protection Clause of the Fourteenth Amendment mandates that the State treat similarly situated individuals in a similar fashion. *McNabola v. Chicago Transit Authority,* 10 F.3d 501, 513 (7th Cir.1993). H.B. 206 distinguishes certificated from noncertificated employees and "third parties" who contract with the State from plaintiff unions. Thus, the law does not discriminate against similarly situated individuals. Noncertificated employees are not similarly situated with state licensed employees who are predominantly teachers and carry out the educational functions of the schools. Likewise, unions who engage in collective bargaining are not similarly situated to private "third parties" who negotiate contracts by different means. H.B. 206 treats differently situated individuals differently, something the Equal Protection Clause does not guard against.

Assuming the Equal Protection Clause would apply to this case, plaintiffs admit that the rational basis test applies. As discussed above, the elimination of civil service status is rationally related to the legitimate goals of improving the Chicago public schools. The fact that only non-certificated employees are affected does not change the analysis as legislatures may make changes incrementally; they are not obligated to approach a problem comprehensively. *Brazil–Breashears v. Bilandic,* 53 F.3d 789, 793 (7th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 188, 133 L.Ed.2d 125 (1995), citing *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 314–16, 113 S.Ct. 2096, 2102, 124 L.Ed.2d 211 (1993). In addition, altering the way in which the School Board deals with plaintiff unions in relation to expenditure plans is rationally related to the legitimate goal of bringing financial stability to the Chicago public school system.

## Eleventh Amendment

Plaintiffs seek to have this Court enjoin Governor Edgar, the Illinois Educational Labor Relations Board, and the Chicago School Reform Board from enforcing H.B. 206 on the grounds that it violates three provisions of the Illinois Constitution. However, a federal court cannot grant relief against State officials on the basis of State law. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984). The fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III. *Id.* at 98, 104 S.Ct. at 906–07. A federal court may not instruct State officials on how to conform their conduct to State law because such a result would directly conflict with the principles of federalism that underlie the Eleventh Amendment. *Id.* at 106, 104 S.Ct. at 911. In addition, the fact that a district court may have pendant jurisdiction over State law claims does not override a bar on the claim imposed by the Eleventh Amendment. *Id.* at 120–21, 104 S.Ct. at 918–19. The Seventh Circuit has reiterated this point explaining that "under *Pennhurst* the district court may not use (its view of) state law as the basis of an injunction against state officials who hold a different interpretation of state law." *Bethune Plaza, Inc. v. Lumpkin,* 863 F.2d 525, 528 (7th Cir.1988).

Governor Edgar and the Illinois Educational Labor Relations Board clearly constitute State officials within the meaning of the Eleventh Amendment. Since counts VIII–X seek relief solely based on State Constitutional grounds, this Court is barred from granting relief against these officials.

The bar to suit in federal courts protects the State and its agencies. It does not shield counties, municipal corporations or political subdivisions. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572–73, 50 L.Ed.2d 471

(1977). Thus, there remains a question whether the Chicago School Reform Board is subject to suit on the State Constitutional issues in federal court. This issue turns on whether the Board is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend. The answer depends in part on the nature of the entity created by State law. *Id.* The Court in *Mt. Healthy* concluded that the school boards' extensive powers to issue bonds and levy taxes, and their categorization under State law as a form of political subdivision, rendered them on balance more like a county or city. *Id.* Thus, the Eleventh Amendment shields an entity from suit in federal court only when it is so closely tied to the State as to be the direct means by which the State acts. The Chicago School Reform Board is not considered an arm of the State for Eleventh Amendment purposes as the Board has extensive powers and controls over the school system.

However, any relief granted against the Chicago School Reform Board on the basis of the State Constitution would be incomplete at best. The remedy involved here is inextricably linked to the State. The Board would require State ruling and action in many respects to enforce the provisions of the old laws prior to their amendment by H.B. 206. It is clear that without an injunction against the State institutions and officials in this case, an order entered on State-law grounds would be limited. "Such an ineffective enforcement of state law would not appear to serve the purposes of efficiency, convenience, and fairness that must inform the exercise of pendent jurisdiction." *Pennhurst,* 465 U.S. at 124, 104 S.Ct. at 921. Therefore, this Court will not hear the State law claims against the Chicago School Reform Board.

### Conclusion

Defendants' motions to dismiss are granted in their entirety.