**UNIVERSITY OF HAWAII PROFESSIONAL ASSEMBLY, et al., Plaintiffs,**

v.

**Benjamin J. CAYETANO, in his capacity as Governor of the State of Hawaii, et al., Defendants.**

No. CIV. 98–165 ACK.

United States District Court, D. Hawai'i.

July 18, 2000.

---

Wade C. Zukeran, Gill & Zukeran, Honolulu, HI, for University of Hawaii Professional Assembly, Alexander Malahoff, Linda Currivan, Diane Ferreira, Hugh Folk, Vincent Linares, David Miller, plaintiffs.

Gary Hynds, James Earl Halvorson, Ruth I. Tsujimura, Department of the Attorney General, Employment Law Division, Honolulu, HI, for Benjamin J. Cayetano, in his capacity as Governor of the State of Hawaii, Sam Callejo, in his capacity as Comptroller of the State of Hawaii, defendants.

1. Plaintiffs further argued that the proposed lag in pay amounted to a pay cut because they would receive one fewer paycheck that year, thereby making only $^{23}/_{24}$ of their expected annual salary.

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND/OR VACATE OR DISSOLVE ORDER FOR PRELIMINARY INJUNCTION

KAY, District Judge.

### INTRODUCTION

Plaintiffs in this case are the University of Hawaii Professional Assembly ("UHPA") and certain of its members, officers, and directors. UHPA is the exclusive representative of bargaining unit 7, the faculty members at the University of Hawaii ("UH"). UHPA negotiates with the Board of Regents, University of Hawaii ("BOR"), on the subject of wages, hours, and working conditions.

On February 23, 1998, Plaintiffs filed a complaint for declaratory and prospective injunctive relief against Benjamin Cayetano (in his official capacity as Governor of the State of Hawaii) and Sam Callejo (in his official capacity as Comptroller of Hawaii) ("Defendants"). Plaintiffs claimed that the statutory imposition of a delay in the tender of pay was an unconstitutional impairment of their existing collective bargaining agreement ("CBA") with the State of Hawaii.[1]

On June 16, 1998, the Court issued an Order granting Plaintiffs' motion for a preliminary injunction ("the injunction"). The Order enjoined Defendants from implementing the statute authorizing the payroll lag as to UHPA members, i.e., it barred Defendants from delaying Plaintiffs' payroll. The Ninth Circuit affirmed. In the motion before the Court today, Defendants ask the Court to dismiss the case and/or vacate or dissolve the injunction.

### BACKGROUND [2]

Historically, UH faculty members, like all state employees, received paychecks on the fifteenth day and the last day of each month pursuant to H.R.S. § 78–13, which

2. Much of these background facts are taken from the Court's Order of June 16, 1998 granting Plaintiff's motion for a preliminary injunction.

provided that state employees (with some exceptions) shall be paid "at least semimonthly." On June 5, 1996, Act 80, Session Laws of Hawaii 1996 was enacted. That law amended H.R.S. § 78–13 to provide for a one-pay-period delay in payment of salaries by stating that

the governor, upon reasonable notice and upon determination that the payroll payment basis should be converted from predicted payroll to after-the-fact payroll, may allow a one-time once a month payroll payment to all public officers and employees to effect a conversion to after-the-fact payroll; provided that the conversion time schedule shall occur over a one-year period.

H.R.S. § 78–13 (1997 version). On January 17, 1997, the Hawaii Labor Relations Board ("HLRB") issued an order stating that a delay in payroll is material to the UHPA collective bargaining agreement and therefore the State must negotiate such a delay.

On January 27, 1997, UHPA and BOR executed a CBA that covered the period from July 1, 1995 to June 30, 1999. The collective bargaining agreement included terms regarding salary levels on a monthly and annual basis. There is no mention of any payroll delay in the collective bargaining agreement.

On July 3, 1997, Governor Cayetano signed into law Act 355, Session Laws of Hawaii 1997 ("Act 355"). This act amended H.R.S. § 78–13 to provide:

Unless otherwise provided by law, all officers and employees shall be paid at least semimonthly except ... that the governor, upon reasonable notice and upon determination that the payroll payment basis should be converted from predicted payroll to after-the-fact payroll, may allow a one-time once a month payroll payment to all public officers and employees to effect a conversion to after-the-fact payroll as follows:

(1) The implementation of the after-the-fact payroll will commence with the June 30, 1998, pay day, which will be delayed to July 1, 1998;

(2) The July 15, 1998, pay day will be delayed to July 17, 1998;

(3) The July 31, 1998, pay day will be delayed to August 3, 1998;

(4) The August 14, 1998, pay day will be delayed to August 19, 1998;

(5) The August 31, 1998, pay day will be delayed to September 4, 1998;

(6) The September 15, 1998, pay day will be delayed to September 18, 1998; and

(7) Thereafter, pay days will be on the fifth and the twentieth of every month. If the fifth and the twentieth fall on a state holiday, Saturday, or Sunday, the pay day will be the immediately preceding weekday. The implementation of the after-the-fact payroll shall not be subject to negotiation under chapter 89.

H.R.S. § 78–13 (1999). The last sentence of the amendment made implementation of after-the-fact payroll not subject to negotiation under chapter 89 of H.R.S. In other words, the legislature overturned the HLRB decision that a delay in payroll is negotiable.

As explained above, this Court found, and the Ninth Circuit agreed, that it was likely that Act 355 substantially impaired the CBA in violation of the contracts clause. *See* U.S. Const. art. I, § 10; *University of Hawaii Prof'l Assembly v. Cayetano*, 183 F.3d 1096 (9th Cir.1999). Although not an explicit term in the CBA, the Court found that it "is likely that the timing of the payment of each paycheck is included in the [CBA]." Order Granting Plaintiff's Motion for a Preliminary Injunction at 6 (filed June 16, 1998) ("Injunction Order"). The Court reasoned that because at the time the CBA was entered into, the law set pay dates as the fifteenth and last day of each month and made the timing of these pay dates a negotiable issue, the CBA therefore included these terms. *See id.* at 7 ("The [CBA] thereby included and did not alter the payroll timing that was in place when the agreement was executed. Thus Act 355 impairs the collective bargaining agreement.").

The CBA was set to expire by its own terms on June 30, 1999. Although negotiations continue, the parties in this case have not signed a new CBA. *See* Mot. Dis. at 3 and attached affidavit of Davis Yogi ¶ 3. There is now a dispute over whether this contract did expire or whether it was extended. Defendants argue that the CBA between the parties expired on June 30, 1999. Plaintiffs argue, however, that the CBA has been continued in all relevant parts through July 1, 2001.

On April 13, 2000, Defendants filed the instant motion to dismiss and/or vacate or dissolve order for preliminary injunction. On June 14, 2000, Plaintiffs filed a memorandum in opposition. On June 26, 2000, Defendants filed a reply.

### DISCUSSION

■ As a threshold matter, courts have continuing jurisdiction to terminate, dissolve, vacate, or modify an injunction or an interlocutory order in the event that changed circumstances require it. *See United States v. Oregon,* 769 F.2d 1410, 1416 (9th Cir.1985); *see also In re Detroit Auto Dealers Assoc., Inc.,* 84 F.3d 787, 789 (6th Cir.1996). The Court's power to modify an injunction may arise from a change of law or a change of fact. *See Yuclan Enters., Inc. v. Nakagawa,* 583 F.Supp. 1574, 1577 (D.Haw.1984) (Pence, S.J.); *see also Detroit Auto Dealers,* 84 F.3d at 789.

Defendants argue that the basis for the preliminary injunction was the effect of Act 355 upon the CBA in effect from 1995 until June 30, 1999. They argue that because the CBA has expired, there is no longer any contract that can be impaired by Act 355. They maintain that the CBA has not been extended, the parties have not entered into a successor agreement, and an impasse has not been reached between the groups. *See* Mot. Dis. at 3. Accordingly, Defendants argue that the entire case is now moot and should be dismissed.

Plaintiffs argue that the injunction is not moot because the relevant portions of the CBA have not expired. They maintain that Act 100 of the 1999 Session Laws of the State of Hawaii ("Act 100") which amended, *inter alia,* H.R.S. § 89–9, extended all "cost items" in the CBA through July 1, 2001. Plaintiffs contend that their entitlement to be paid on the fifteenth and last day of each month is a "cost item." Because the relevant portion of the CBA allegedly remains in effect, Plaintiffs argue that the preliminary injunction is still needed to protect their rights. Alternatively, Plaintiffs assert that the Court should stay the proceedings in this case until a state court challenge to Act 100 is resolved.

### I. The CBA Has Expired

■ The essential question is whether the CBA is still in effect. The contracts clause is only implicated when an existing contract is substantially impaired. *See generally* Injunction Order at 6. The CBA was set to expire on June 30, 1999. The injunction should only be maintained if the contract with which Act 355 impermissibly interfered is still in effect.

Act 100 amended H.R.S. § 89–9 by adding the following underlined language:

> The employer and the exclusive representative shall meet at reasonable times, including meetings in advance of the employer's budget-making process, and shall negotiate in good faith with respect to wages, hours, the number of incremental and longevity steps and movement between steps within the salary range, the amounts of contributions by the State and respective counties to the Hawaii public employees health fund to the extent allowed in subsection (e), and other terms and conditions of employment which are subject to negotiations under this chapter and which are to be embodied in a written agreement, or any question arising thereunder, but such obligation does not compel either party to agree to a proposal or make a concession; *provided that the parties may not negotiate with respect to cost items as defined by section 89–2 for the biennium*

*1999 to 2001, and the cost items of employees in bargaining units under section 89–6 in effect on June 30, 1999, shall remain in effect until July 1, 2001.*

H.R.S. § 89–9(a) (emphasis added); *see also* 1999 Session Laws of Hawaii 100, § 2. Cost items are defined to,

> include[ ] wages, hours, amounts of contributions by the State and counties to the Hawaii public employees health fund, and other terms and conditions of employment, *the implementation of which requires an appropriation by a legislative body.*

H.R.S. § 89–2 (emphasis added).[3] According to an opinion by the Hawaii Attorney General, a cost item is a provision in a collective bargaining agreement the implementation of which requires *new or additional* appropriations. *See* Op. Att'y Gen. Haw. 72–10 at 3 (Apr. 4, 1972). This comports with the language of H.R.S. § 89–10(b), which states that "[a]ll cost items [in CBAs agreed to between the employer and the employee's bargaining group] shall be subject to appropriations by the appropriate legislative bodies."

Plaintiffs argue that Act 100 extends the "cost items" in the CBA until July 1, 2001. Significantly, they argue that included among the cost items is the payroll lag.[4] Plaintiffs do not cite any authority (beyond the statute itself) for their contention that the payroll lag is a cost item, instead "submit[ting] that it is not necessary to examine a long list of Hawaii Labor Board cases on cost items to determine that the payroll lag is a cost item." *See* Opp. at 4. They argue, however, that the payroll lag is clearly a cost item because it was proposed to save the state money. *See id.*

The Court is not persuaded. The Court agrees with Plaintiffs' contention that the CBA contained implied terms on pay dates and that Defendants could not change the pay dates via Act 355 without first negotiating with Plaintiffs. *See* Injunction Order at 6–7; Opp. at 5. However, the Court's finding that pay date was a term in the CBA should not be read as a holding that the date of pay is a "cost item." Plaintiffs have not explained how the days on which they are paid, including making a change to this term, "requires an appropriation by a legislative body." *See* H.R.S. § 89–2. They focus on the fact that the payroll lag would save the state money, apparently believing that because the provision involves money, it is a cost item. The Court finds that the dates upon which Plaintiffs are paid is not a "cost item" as that term is defined in H.R.S. § 89–2. Accordingly, Plaintiffs' contention that the timing of their pay checks as it stood on June 30, 1999 is continued another two years until July 1, 2001 by Act 100 lacks merit. Insofar as the CBA includes a term that Plaintiffs are to be paid on the fifteenth and the thirtieth of each month, this term (and all the other terms) of the CBA expired on June 30, 1999.

Moreover, and alternatively, even if the Court found that the payroll lag was a cost item, this would not change the fact that the CBA expired on June 30, 1999. On that day, Plaintiffs' rights under the contract expired. To the extent that Act 100 extended the cost items (including, arguendo, the payroll lag) until July 1, 2001, these rights arise under Act 100, not the CBA.[5] The Court finds that Plaintiffs rights under the CBA expired on June 30, 1999.

---

3. Defendants cite Act 253, signed by Governor Cayetano on June 19, 2000. Act 253 amends the definition of "costs item" in § 89–2 to read: " 'Costs items' means all items agreed to in the course of collective bargaining that an employer cannot absorb under its customary operating budgetary procedures and that require additional appropriations by its respective legislative body for implementation." *See* Act 253, § 93. This change in definition is not effective, however, until July 1, 2002. *See id.* § 152.

4. Plaintiffs use the term "payroll lag" in their brief, as do Defendants, to designate the timing of pay checks. *See* Opp. at 4.

5. Plaintiffs ask the Court to stay its decision pending the written order in *UPW AFSCME Local 646 AFL–CIO v. Yogi*, Civ. No 99–0–003793 (First Circuit Hawaii). In a minute order dated January 13, 2000, Judge Virginia Crandall upheld a challenge based on the Hawaii Constitution to § 2 of Act 100, which amended H.R.S. § 89–9. *See* Minute Order

## II. The Injunction is Dissolved and the Case is Dismissed

■ The contracts clause is only implicated when an *existing* contract is substantially impaired. *See Bricklayers Union Local 21 v. Edgar,* 922 F.Supp. 100, 105 (N.D.Ill.1996) (citing *United States Trust Co. v. New Jersey,* 431 U.S. 1, 17, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977)). The contracts clause is not implicated by *expired* collective bargaining agreements. *See id.* at 105–06. As there is no existing contract that Act 355 impairs, no contracts clause violation is possible and the injunction is no longer needed. This case is moot.

The case of *Association of Surrogates and Supreme Court Reporters v. State,* 79 N.Y.2d 39, 580 N.Y.S.2d 153, 588 N.E.2d 51 (N.Y.1992), cited by Plaintiffs, does not lead the Court to a different conclusion. In *Surrogates,* the Court of Appeals of New York evaluated whether a similar payroll lag law violated the contracts clause of the U.S. Constitution. The contract that the plaintiffs in *Surrogates* claimed had been unconstitutionally interfered with had expired prior to passage of the statute. *See id.* at 44, 580 N.Y.S.2d 153, 588 N.E.2d 51. Under a "continuing benefits provision" in New York civil service law, however, the terms of the expired agreement itself remained in place until a new agreement was reached. *See id.* at 45, 580 N.Y.S.2d 153, 588 N.E.2d 51. In other words, the plaintiffs' rights under contract continued. Accordingly, the court found that the plaintiffs should receive protection of the contracts clause. *See id.* at 45–47, 580 N.Y.S.2d 153, 588 N.E.2d 51.

Although at first blush the instant case appears analogous to *Surrogates,* it is distinguishable in one very important respect.

(attached as Ex. A to Pl. Opp.). As of the writing of this Order, no written order has been issued explaining the breadth of Judge Crandall's ruling. However, because the Court concludes that the payroll lag is not a cost item, or alternatively, that Plaintiffs' rights under the CBA have expired even if payroll lag is a cost item, there is no need for this Court to stay its decision.

New York has a statute that extends the terms of CBAs after their expiration while negotiations are pending. The *Surrogates* court held that this statute extended the contract therein such that the plaintiffs still had rights arising from the contract and thus, the contracts clause was still implicated. The Court has found no analogous statute in Hawaii Revised Statutes, nor an analogous theory in Hawaii case law, whereby contract rights continue to exist after expiration. Thus, the Court cannot conclude that the CBA still creates an enforceable contractual obligation such that the contracts clause is implicated in the instant case. *See Bricklayers,* 922 F.Supp. at 105–06 (contracts clause not implicated by expired collective bargaining agreements). Accordingly, the injunction is DISSOLVED and the case is DISMISSED.

Defendants' citations to *NLRB v. Katz,* 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962), and related cases are misplaced as they are inapplicable to the issues before this Court. Defendants cite *Katz* for the premise that an employer may not take unilateral action on mandatory subjects of bargaining while still in negotiations for a successor agreement. *See id.* at 743, 747, 82 S.Ct. 1107; *see also Litton Financial Printing Division v. NLRB,* 501 U.S. 190, 198, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991) (same). They then cite other cases for the premise that unilateral changes are allowable on topics that are non-negotiable. Defendants appear to cite this line of cases to persuade the Court that even if the CBA terms are still in effect during negotiations, they may make a unilateral change (in Plaintiffs' pay dates) because the topic of pay dates is now non-negotiable [6] under Act 355.

6. A potential flaw in Defendants' logic is that to the extent the CBA terms are still in effect pending negotiation, one term of the CBA is that the payroll lag *is* negotiable. This fact was central to the Court's earlier holding. *See* Injunction Order at 7. The Court need not resolve this issue, however, because as explained above, the unilateral change doctrine

The Court finds these cases, and Defendants arguments, irrelevant to the issue of whether the injunction should be retained or vacated. *Katz* and *Litton* stand for the proposition that an employer violates the National Labor Relations Act (by performance of an unfair labor practice) when it implements a unilateral change. They do not stand for the proposition that the parties still have *contract* rights after the expiration of the contract; in fact, they explicitly hold to the contrary. *See Litton,* 501 U.S. at 206–07, 111 S.Ct. 2215 ("[A]n expired contract has by its own terms released all its parties from their respective contractual obligations .... Although after expiration most terms and conditions of employment are not subject to unilateral change, in order to protect the statutory right to bargain, those terms and conditions no longer have force *by virtue of the contract.*") (emphasis added); *see also Bricklayers,* 922 F.Supp. at 105–06 (although ban on unilateral changes makes it an unfair labor practice for employer to unilaterally change terms and conditions of employment during negotiations for a successor contract, this does not mean that terms of old contract have effect such that the contracts clause is implicated once contract expires). These cases are inapplicable here—this Court is not evaluating an unfair labor practice claim (or indeed, even a claim arising under the National Labor Relations Act). The only question before this Court is whether there are still enforceable contract rights between the parties. The Court finds the answer to that question to be no.

### CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss and/or Vacate or Dissolve Order for Preliminary Injunction. The preliminary injunction is dissolved and the case is dismissed.

IT IS SO ORDERED.

---

has nothing to do with whether Plaintiffs' *contract* rights under the CBA remain.