Karen BRAZIL–BREASHEARS,
Plaintiff–Appellant,

v.

Michael BILANDIC, Charles Freeman, James Heiple, Benjamin Miller, Mary Ann McMorrow, Moses Harrison, John Nickels, Justices of the Illinois Supreme Court, and George Cenar, Defendants–Appellees.

No. 93–3954.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 31, 1994.

Decided April 19, 1995.

Rehearing Denied May 4, 1995.

R. Eugene Pincham (argued), Chicago, IL, for plaintiff-appellant.

Thomas A. Ioppolo, Asst. Atty. Gen., Office of the Atty. Gen., Chicago, IL, Alison E. O'Hara (argued), Office of the Atty. Gen., Civil Appeals Div., Chicago, IL, for defendants-appellees.

Before BAUER, KANNE, and ROVNER, Circuit Judges.

KANNE, Circuit Judge.

On September 14, 1993, Karen Brazil-Breashears, a staff attorney for the Illinois Appellate Court for the First District, began circulating a petition to enable her to be placed on the ballot for the March 15, 1994 primary election to the Circuit Court of Cook County. According to Brazil-Breashears' complaint, a number of co-workers assisted her in circulating petitions for her candidacy.

A couple weeks later, on October 1, 1993, the Supreme Court of Illinois issued an employment policy (the Policy) prohibiting all state judicial employees from engaging in a number of political activities. The Policy states:

> State-paid Judicial Branch employees serving the Supreme, Appellate and Circuit Courts shall not:
> 
> (1) become a candidate for nomination, or election to, or accept appointment to any public office;
> 
> (2) hold any office in or solicit funds for any political organization; or
> 
> (3) publicly endorse, publicly oppose, or solicit funds for candidates for public office.
> 
> Any employee who engages in any of the above activity shall be deemed to have vacated his or her position and shall be discharged.

On November 18, 1993, the Policy was amended to allow employees to request to take an unpaid leave of absence to engage in political activities. Such request is not to "be unreasonably denied. A request for a leave of absence may, however, be denied if it would substantially interfere with operational needs of the Courts or the Administrative Office." Brazil-Breashears acknowledges in her complaint that the policy was not instituted in direct response to her attempted candidacy.

George Cenar, Brazil-Breashears' direct supervisor, informed her of the Policy on October 4, and shortly thereafter, Brazil-Breashears and her co-workers ceased their efforts to place Brazil-Breashears on the March 15 primary ballot. Brazil-Breashears alleges she ceased her efforts because of the Policy. On October 23, 1993, Brazil-Breashears filed this lawsuit against the Justices of the Illinois Supreme Court and Cenar. The complaint alleges that the Policy unconstitutionally infringes her First Amendment right to free speech, violates her Fourteenth Amendment right to equal protection, and constitutes an improper *ex post facto* order.[1] Brazil-Breashears sought a Temporary Restraining Order (TRO) and asked that the policy be struck down.

The district court denied Brazil-Breashears' TRO and, in response to Defendants' 12(b)(6) motion, dismissed the complaint. We review *de novo* the district court's decision to dismiss Brazil-Breashears' complaint. *Bethlehem Steel Corp. v. Bush,* 918 F.2d 1323, 1326 (7th Cir.1990).

### First Amendment

■ We need not pause long on Brazil-Breashears' claim that the Policy unconstitutionally infringes her free speech rights. Brazil-Breashears wanted to run for elected office. Time and again, the Supreme Court and lower federal courts have upheld similar restrictions on the political activity of state employees. *See, e.g., Clements v. Fashing,* 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982); *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Fletcher v. Marino,* 882 F.2d 605 (2nd Cir. 1989); *Krisher v. Sharpe,* 763 F.Supp. 1313 (E.D.Pa.1991), *affirmed,* 944 F.2d 897 (3rd Cir.1991). Recently, a judge on this court called the question of the propriety of resign-to-run rules "settled doctrine." *Wilbur v. Mahan,* 3 F.3d 214, 219 (7th Cir.1993) (Easterbrook, J. concurring).

■ The parties disagree on what level of scrutiny applies to this case. Brazil-Breashears claims that under *Eu v. San Francisco County Democratic Central Comm.,* 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989), this court should apply strict scrutiny, requiring that the governmental ends be compelling and the means be narrowly tailored to reach those ends. But *Eu* dealt with the constitutionality of state

---

1. Brazil-Breashears has not pursued this theory on appeal.

election laws. California had restricted the ability of political parties to endorse candidates in primary elections and mandated certain internal workings of the parties. The associational rights of political parties are fundamental rights, *Tashjian v. Republican Party of Conn.,* 479 U.S. 208, 217, 107 S.Ct. 544, 550, 93 L.Ed.2d 514 (1986), whereas the right to candidacy is not, *Bullock v. Carter,* 405 U.S. 134, 142–43, 92 S.Ct. 849, 855, 31 L.Ed.2d 92 (1972); *see also Citizens for John W. Moore v. Chicago Election Comm'rs,* 845 F.2d 144, 148 (7th Cir.1988), and, therefore, some lesser level of scrutiny applies.

However, to say that the right to candidacy is not fundamental is not to say that a rational basis analysis applies. In *Citizens for John W. Moore,* this court noted that decisions of the Supreme Court in the area of First Amendment rights suggest "that courts should avoid putting decisions in terms of a 'standard of review.'" 845 F.2d at 1257. Defendants admit that "[w]hether such a policy violates the First Amendment has been traditionally dependent upon a balancing test between the individual's First Amendment rights and the interests of the public body." We agree. Nonetheless, we find that the rather minor restriction imposed on Brazil–Breashears does not unconstitutionally infringe on her First Amendment rights. The State of Illinois has a substantial interest in maintaining the integrity of the judicial branch. The Policy serves this interest in that it enhances the efficiency of the workforce and prevents against actual, as well as the appearance of, impropriety. As the Supreme Court has noted, campaigning may tempt an employee to "devote less than [her] full time and energies to the responsibilities of [her] office," and "to render decisions and take actions that might serve more to further [her] political ambitions than the responsibi-

ties of [her] office." *Clements,* 457 U.S. at 968, 102 S.Ct. at 2846.

■ Brazil–Breashears additionally argues that, even if the Policy is constitutional as applied to her situation, it could be applied so as to unconstitutionally infringe others' First Amendment rights. The general rule is that one has no standing to raise the First Amendment rights of others. *See New York v. Ferber,* 458 U.S. 747, 767, 102 S.Ct. 3348, 3360, 73 L.Ed.2d 1113 (1982). However, the Supreme Court has held that if a statute is substantially overbroad, such that it "reaches a substantial number of impermissible applications," a court may strike down the law on its face, even if the rights of the plaintiff before the court were not violated. *Id.,* 458 U.S. at 771, 102 S.Ct. at 3362. To support her claim that the Policy is overbroad, Brazil–Breashears catalogs a parade of horrors, hypothetical actions that she argues fall within the Policy's purview. Yet, the Supreme Court has already passed judgment on two of the entries in her parade, finding their ban unobjectionable.[2] Others imagined by Brazil–Breashears seem to us so unlikely to be found to violate the Policy that we are willing to decide the issues on a case-by-case basis. *See Broadrick,* 413 U.S. at 615–16, 93 S.Ct. at 2918 (holding that unless a statute is substantially overbroad, overbreadth can be handled on a case-by-case basis).[3]

### Equal Protection

■ Brazil–Breashears also argues that the Policy violates the Fourteenth Amendment's Equal Protection clause by restricting the political activities of employees but not of sitting judges. She claims that the vices that the Policy aims to prevent apply equally to judges running for retention or election.[4]

---

**2.** Brazil–Breashears fears that the Policy may ban circulating a petition for an individual to become a candidate for public office and managing a candidate's campaign. The Court has specifically held that the government *can* prevent its employees from engaging in these activities. *See United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers,* 413 U.S. 548, 556, 93 S.Ct. 2880, 2886, 37 L.Ed.2d 796 (1973).

**3.** For example, Brazil–Breashears speculates that "[the policy] may prohibit state judicial employ-

ees from wearing a button bearing a candidate's image, or stating a slogan or name;" "driving or riding in a car bearing a bumper sticker which states a candidate's name or slogan;" "applauding a candidate at a public function;" and "expressing support or opposition for a candidate without seeking to influence others during a discussion with table mates in a restaurant."

**4.** Under the Illinois Canons of Judicial Conduct, sitting judges are prevented from running for nonjudicial office. ILL S.CT R. 67. Thus the only

· Because employees of the judicial branch of the state of Illinois are not a suspect class and, as stated above, the right to run for office is not a fundamental right, the Policy need only survive rational basis review. A number of reasons justify the Illinois Supreme Court's decision to apply the policy only to judicial employees and not to judges. Most importantly, the government (in this case the Illinois Supreme Court) need not comprehensively attack an identified vice: it "must be allowed leeway to approach a perceived problem incrementally." *FCC v. Beach Communications, Inc.*, — U.S. ——, ——, 113 S.Ct. 2096, 2102, 124 L.Ed.2d 211 (1993); *see also Smith v. Shalala*, 5 F.3d 235, 240 (7th Cir.1993). This is true regardless of the probability that the government will ever address the rest of the problem.

Moreover, good reasons exist not to apply the Policy to sitting judges. First, requiring sitting judges to take a leave-of-absence in order to stand for retention[5] by the electorate would cause enormous disruption in the judicial process. The tumult that would occur each election cycle by the absence of all of the sitting judges that decide to face the electorate would be much greater than the disruption that could occur by the more infrequent leave-of-absence of those judicial employees that decide to run for judicial office. The Illinois Supreme Court may have decided, correctly in our minds, that the costs associated with applying the Policy to sitting judges would greatly outweigh the benefits to be derived.

Additionally, allowing employees to run for judicial office could cause major disruption if the employee were to run against a sitting judge for whom he works. We have recently recognized this not insubstantial intra-office concern. *See, e.g., Wilbur*, 3 F.3d at 218.

Other justifications for the policy may exist, but those listed are more than sufficient

to uphold the policy against Brazil–Breashears' Equal Protection claim. The district court's dismissal of Brazil–Breashears' complaint is

AFFIRMED.

---

disparity exists in the judges' ability to run for judicial office, which is also regulated by the canons. *Id.*

5. Illinois reelects sitting judges by a retention system. They must receive three-fifths of the electors' votes to be retained. This election is non-partisan. ILL CONST. art. VI, § 12. Presum-

ably, if the judge is not retained, he may run again for election at the end of his term.

We note that the canon governing the campaign conduct of sitting judges in the Illinois Code of Judicial Conduct applies equally to candidates for retention and candidates for election. ILL.S.CT.R. 67(B)(1).