In the

# United States Court of Appeals
## For the Seventh Circuit

No. 16-1003

MATTHEW D. CLAUSSEN, *et al.*,

*Plaintiffs-Appellants*,

*v.*

MICHAEL R. PENCE,
Governor of the State of Indiana, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
2:15-cv-00052 — **Philip P. Simon**, *Chief Judge*.

ARGUED MAY 27, 2016 — DECIDED JUNE 10, 2016

Before POSNER and FLAUM, *Circuit Judges*, and ALONSO,
*District Judge*.*

FLAUM, *Circuit Judge*. Plaintiffs are civil servants who hold
elected office in the municipality that employs them. They
challenge a recently-enacted Indiana law prohibiting persons

---

* The Honorable Jorge L. Alonso, United States District Court for the
Northern District of Illinois, sitting by designation.

from simultaneously holding elected office and being employed as civil servants in the same unit of government. Plaintiffs contend that the law violates the First Amendment and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. The district court granted defendants' motion to dismiss, and for the reasons that follow, we affirm.

## I. Background

In 2012, the Indiana General Assembly enacted Indiana Code § 3-5-9-5 (the "Indiana Law" or the "Law"), which provides, in relevant part, that "an individual is considered to have resigned as a government employee when the individual assumes an elected office of the unit that employs the individual." The Law became effective on January 1, 2013, but a grandfather clause allowed then-current officeholders to complete their terms before becoming subject to it. *See* Ind. Code § 3-5-9-7.

Plaintiffs are civil servants who also serve on city and town councils,[1] which are legislative bodies responsible for adopting budgets, levying taxes, and authorizing financial

---

[1] Plaintiff Matthew D. Claussen has been employed as a police officer by the City of Hobart Police Department since 1981. Claussen was elected to the Hobart City Council in 1994. Plaintiff Susan Pelfrey has been employed as an office manager by the Water Works of the Town of New Chicago since 1996 and was appointed to the Town Council of New Chicago in 2010. Plaintiff Michael Opinker has been employed by the Fire Department of the City of Hammond since 1994 and was appointed to the Hammond City Council in 2010. Plaintiff Juda Parks has been employed as a police officer with the City of East Chicago Police Department since 1998 and was elected to the East Chicago City Council in 2007. Each of the plaintiffs was reelected on November 3, 2015.

appropriations, among other things. Importantly, city and town councils have the authority to set the annual compensation for the municipal employees in their unit of government. In other words, plaintiffs have the ability to determine their own compensation, with some restrictions.[2]

It is undisputed that all but one of the plaintiffs earn a significantly higher salary in their civil service positions than in their elected positions.[3] Therefore, plaintiffs contend that if the Law takes effect, they will be forced to resign from elected office.

On February 10, 2015, plaintiffs sued the State of Indiana and the Indiana State Board of Accounts—the state agency most closely tied to enforcement of the Indiana Law—in federal court in the Northern District of Indiana.[4] Relevant to this appeal, plaintiffs argued that the Law violated the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.

The State filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) on April 6, 2015. Before the district court ruled on the motion, plaintiffs amended their complaint and substituted the governor of Indiana, Michael Pence, as

---

[2] For example, both city and town councils must have their estimated budgets approved by the Indiana Department of Local Government Finance and the State Board of Accounts.

[3] For example, Claussen earns nearly $60,000 as a police officer but only about $13,000 as a city councilman.

[4] Plaintiffs also challenged the Indiana Law in state court, and the Lake County Circuit Court enjoined the Law on the eve of the date that it was to take effect. *See Claussen v. Pence*, No. 45C01-1512-PL-104 (Ind. Cir. Ct. Dec. 30, 2015). The state court case is currently pending.

well as several members of the Indiana State Board of Accounts, as defendants.[5] Defendants filed a motion to dismiss the amended complaint and plaintiffs responded with a motion for summary judgment. On December 2, 2015, the district court granted defendants' motion and dismissed plaintiffs' complaint under Rule 12(b)(6).

## II. Discussion

Plaintiffs appeal the dismissal of their First Amendment and Fourteenth Amendment claims. We review de novo the district court's dismissal of a complaint under Rule 12(b)(6). *Brazil-Breashears v. Bilandic*, 53 F.3d 789, 791 (7th Cir. 1995).

### A. First Amendment

Plaintiffs contend that the Indiana Law violates the First Amendment because it burdens their right to assume municipal office once elected. Defendants respond that it is established law that requiring public employees to resign before *running* for elected office does not violate the First Amendment. Thus, defendants contend that the less burdensome Indiana Law, which only requires resignation if the civil servant runs for office and wins, must be constitutional.

We agree with defendants that the Indiana Law falls squarely within the bounds of settled Supreme Court precedent upholding restrictions on the political activity of state employees. *See Clements v. Fashing*, 457 U.S. 957 (1982) (upholding the constitutionality of provisions of the Texas Constitution restricting the political activity of state employees, including by prohibiting a sitting judge from serving on the

---

[5] The individual State Board of Accounts defendants are Paul Joyce, Mike Bozymski, and Tammy White.

state legislature); *Broadrick v. Oklahoma,* 413 U.S. 601 (1973) (holding that Oklahoma may regulate the political activities of its state employees); *U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548 (1973) (reaffirming *United Pub. Workers of Am. v. Mitchell*, 330 U.S. 75 (1947), which held that the Hatch Act's restrictions on a broad range of political activities by federal employees was constitutionally permissible). In fact, the Supreme Court has repeatedly upheld the constitutionality of "resign-to-run" laws, which forbid public employees from running for elected office. *Clements*, 457 U.S. at 971–72; *Broadrick*, 413 U.S. at 616–17; *Letter Carriers*, 413 U.S. at 556. As defendants point out, resign-to-run laws place a greater burden on candidacy than the Indiana Law because the public employee who wishes to run for office must resign his or her employment in order to become a candidate. By contrast, under the Indiana Law, a civil servant is required to resign only if he or she is elected.

Plaintiffs argue in vain that, unlike resign-to-run laws, the Indiana Law implicates fundamental rights and thus deserves heightened scrutiny. They contend that the right to assume office once elected is derived from the right to vote, and is thus a fundamental right, distinguishable from the right to candidacy. In the alternative, plaintiffs contend that heightened scrutiny is appropriate because the Indiana Law burdens voters by limiting the field of candidates from which they may choose.

At the outset, we agree with the district court that the right to assume or hold office once elected is not a fundamental right. It is well established that the right to be a candidate for office is not a fundamental right. *Brazil-Breashears*, 53 F.3d at

792. Like the other federal courts that have confronted this is-
sue, we agree that there is "no palpable distinction" between
a prohibition on running for office and a prohibition on hold-
ing office. *Krisher v. Sharpe*, 763 F. Supp. 1313, 1319 (E.D. Pa.
1991), *aff'd*, 944 F.2d 897 (3d Cir. 1991); *Fletcher v. Marino*, 882
F.2d 605, 614 (2d Cir. 1989) (deeming "absurd" plaintiffs' ar-
gument that "because they have been allowed to run for office
they cannot now be prevented from taking office").

We likewise reject plaintiffs' alternative argument that the
Indiana Law deserves heightened scrutiny because it burdens
voters' exercise of the franchise. The Supreme Court has
acknowledged that laws affecting a candidate's access to the
ballot implicate voters' First and Fourteenth Amendment
rights, and in some circumstances, deserve a close look. But
the "existence of … barriers [to candidacy] does not of itself
compel close scrutiny." *Bullock v. Carter*, 405 U.S. 134, 143
(1972). To warrant a heightened level of scrutiny, the con-
tested statute must significantly encroach upon the right to
vote or a candidate's access to the ballot. *See id.* at 144 (closely
scrutinizing a law requiring a hefty filing fee for candidates
because of a "real and appreciable impact on the exercise of
the franchise"); *Anderson v. Celebrezze*, 460 U.S. 780, 788–96
(1983) (striking down an Ohio law requiring independent
presidential candidates to file a statement of candidacy nine
months before the election because of its "substantial impact"
on independent-minded voters); *cf. Timmons v. Twin Cities
Area New Party*, 520 U.S. 351, 358 (1997) ("Regulations impos-
ing severe burdens on plaintiffs' rights must be narrowly tai-
lored and advance a compelling state interest. Lesser burdens,
however, trigger less exacting review, and a State's important

regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." (citation and internal quotation marks omitted)).

Here, the contested law has a negligible impact on voters. The Indiana Law does not exclude candidates from the ballot or bar would-be candidates from running for office. *Cf. U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 835 n.48 (1995) (observing that resign-to-run laws "plac[e] no obstacle between [a candidate] and the ballot or his nomination or his election. He is free to run and the people are free to choose him" (alterations in original) (citation and internal quotation marks omitted)); *Clements*, 457 U.S. at 971 (concluding that the resign-to-run provision's "burden on [plaintiffs'] First Amendment interests in candidacy [was] insignificant"). The Indiana Law does no more than prohibit civil servants from holding elected office in the same body of municipal government that employs them. And unlike the resign-to-run laws that have been deemed constitutional, the Indiana Law allows a candidate to remain employed while taking a chance on the electoral process. As such, the Law's chilling effect on candidacy, and thus voters' exercise of the franchise, is lessened. Finally, the Law applies evenhandedly to candidates from all parties and all backgrounds, and therefore, is unlikely to burden a particular segment of the community at the voters' expense. *Compare Bullock*, 405 U.S. at 144 (striking down a law that would have excluded from the ballot all but the wealthiest candidates or those with affluent backers), *with Clements*, 457 U.S. at 965 ("The burdens placed on those candidates subject to [the resign-to-run laws] in no way depend upon political affiliation or political viewpoint.").

For these reasons, heightened scrutiny is not appropriate. But this does not mean that a rational basis analysis governs the outcome. Rather, whether "a policy violates the First Amendment has been traditionally dependent upon a balancing test between the individual's First Amendment rights and the interests of the public body." *See Brazil-Breashears*, 53 F.3d at 792 (internal quotation marks omitted). Thus, we must consider whether Indiana has imposed restrictions "that serve legitimate state goals," and whether the state's interest outweighs the burden on plaintiffs' First Amendment rights. *See Anderson*, 460 U.S. at 788 n.9 (striking down a law that burdened the First Amendment rights of independent candidates and the voters who supported them that did not further a compelling state interest).

As plaintiffs acknowledge, Indiana has a genuine and compelling interest in avoiding corruption and self-dealing and the appearance of such things. *See Letter Carriers*, 413 U.S. at 565 ("It is not only important that the Government and its employees in fact avoid practicing political justice, but it is also critical that they appear to the public to be avoiding it, if confidence in the system of representative Government is not to be eroded to a disastrous extent."); *Brazil-Breashears*, 53 F.3d at 792 ("The [law at issue] serves [a substantial state] interest in that it enhances the efficiency of the workforce and prevents against actual, as well as the appearance of, impropriety."); *Wright v. DeArmond*, 977 F.2d 339, 346 (7th Cir. 1992) (holding that "conflict-of-interest statutes … address[] a problem of compelling importance to [a state's] capacity to govern justly: preventing political corruption or the appearance of corruption"). And it is obvious that allowing civil servants to serve on a legislative body with the authority to set their own

compensation provides an opportunity for self-dealing and gives the appearance of possible corruption.[6]

In addition, as members of the legislative branch, plaintiffs would be tasked with evaluating laws affecting their departments, creating further conflicts of interest and opportunities for corruption. For example, a police officer considering an ordinance requiring police officers to wear body cameras could have an interest in the outcome of the vote that conflicts with that of the public. Of course, as the district court noted, it would be helpful to have the police officer's insight as to whether requiring body cameras is a worthwhile investment of resources, but "having input is different from being the final decision maker." Plaintiffs would also have the opportunity to use their voting power to curry favor with their superiors and advance in their civil service employment, potentially at the expense of their constituents.

On the other side of the balancing test, the burden on plaintiffs' First Amendment rights is slight. *Cf. Clements*, 457 U.S. at 971–72 (explaining that resign-to-run laws amount to a "*de minimis* interference with [individuals'] interests in candidacy"). Again, plaintiffs are not forbidden from holding public office; if they decide not to run or retain their elected positions, that is their choice. Although plaintiffs will suffer a non-negligible economic consequence if they do not resign from elected office, it is settled law that this consequence is permissible under the First Amendment. *See id.* at 972; *Letter*

---

[6] Plaintiffs contend that because Indiana has imposed safeguards on municipal corruption, the Indiana Law is unnecessary. But it is not for this Court to decide whether the law is necessary or even advisable. *See Clements*, 457 U.S. at 972–73 ("Our view of the wisdom of a … provision may not color our task of constitutional adjudication.").

*Carriers*, 413 U.S. at 556; *see also Davenport v. R.R. Ret. Bd.*, 453 F.2d 185, 188 (5th Cir. 1972) (holding that requiring an alderman to choose between serving in office and collecting an annuity does not impose an unconstitutional condition on his privilege to seek and hold office).

Moreover, the Indiana Law contains no other restraints on the political activity of civil servants, which is an "extra reason to find the [Law] consistent with the Constitution." *Wilbur v. Mahan*, 3 F.3d 214, 220 (7th Cir. 1993) (Easterbrook, J., concurring). If plaintiffs wish to run for office in a government unit other than the one that employs them, or participate in campaigns for candidates they favor, they are free to do so. By contrast, the resign-to-run laws at issue in *Broadrick* and *Letter Carriers* contained additional prohibitions on a broad range of political activities by government employees yet were deemed constitutional. *Broadrick*, 413 U.S. at 617–18; *Letter Carriers*, 413 U.S. at 556.

In sum, because the Indiana Law imposes a small burden on plaintiffs' First Amendment rights, and any burden is outweighed by Indiana's compelling interest in avoiding corruption by public officeholders and the appearance of the same, the district court did not err in dismissing plaintiffs' First Amendment challenge.

### B. Fourteenth Amendment

Plaintiffs also contend that the Indiana Law violates the Equal Protection Clause of the Fourteenth Amendment. They challenge the Law's disparate treatment of civil servants as compared to private government contractors. Plaintiffs point out that both civil servants and government contractors derive a financial benefit from the government unit employing

them, but only civil servants are subject to the Indiana Law. Plaintiffs again claim they are entitled to strict scrutiny review.

Yet, plaintiffs are not members of a suspect class and, as explained above, the right to assume office is not a fundamental right; thus, the Indiana Law need only survive rational basis review. *See Brazil-Breashears*, 53 F.3d at 793. Under rational basis analysis, the disparate treatment need only be rationally related to a legitimate governmental purpose to survive plaintiffs' challenge. *Clements*, 457 U.S. at 963.

The Indiana Law surely passes muster under rational basis review. There is a clear, rational relationship between preventing actual and perceived corruption and Indiana's treatment of municipal employees. Although government contractors who hold elected office could use their voting power to enrich themselves at the expense of the public, Indiana subjects government contractors to extensive disclosure requirements, which reduces the risk of self-dealing. And even if the risk of self-dealing were identical for contractors and employees, Indiana is not required to address all manifestations of public corruption at once. *See FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 316 (1993) (holding that the State "must be allowed leeway to approach a perceived problem incrementally"); *Clements*, 457 U.S. at 969 ("The Equal Protection Clause allows the State to regulate one step at a time, addressing itself to the phase of the problem which seems most acute." (citation and internal quotation marks omitted)). Thus, the district court properly dismissed plaintiffs' claim under the Equal Protection Clause.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.